In the matter of the Petition of ALEXANDER FERRIER.

*Filed at Ottawa June 21, 1882.*

103   367
148   557
103   367
59a  637

1. INDUSTRIAL SCHOOLS—*act relating thereto is not unconstitutional, as being in restraint of personal liberty.* Section 3 of the act entitled "An act to aid industrial schools for girls," approved May 29, 1879, which provides for the committing to such a school of dependent infant girls who beg or receive alms while selling or pretending to sell any article in public, or who frequent any street, alley or other place for the purpose of begging, or who have no permanent place of abode, proper parental care or guardianship, or sufficient means of subsistence, or who for other cause are wanderers through the streets and alleys or other public places, or who live with or frequent the company of, or consort with, reputed thieves or other vicious persons, or who are found in a house of ill-fame or a poor house, is not unconstitutional, as being in violation of the Bill of Rights in respect to personal liberty.

2. Under such act due provision is made for the protection of all just rights, and the institution is not a prison, but a school; and the sending of a young female child there to be taken care of under a proper guardian to be appointed, who otherwise has no one to care for her, is not to be regarded as punishment. The restraint of liberty in such institution is no more than is found in any well regulated school. Such a degree of restraint as is essential to the proper education of a child, is in no just sense an infringement of the inherent and inalienable right to personal liberty.

3. The power conferred upon the county court under this act is but of the same character as the jurisdiction exercised by the courts of chancery over the persons and property of infants, having its foundation in the prerogative of the Crown, flowing from its general power and duty, as *parens patriæ,* to protect those who have no other lawful protector. Such an institution is but an agency of the State for the needful and proper control and care of female infants when found to be destitute of it.

4. SAME—*of the notice required of proceeding.* The statute provides merely that notice shall be given to the parents of such infant female. In this case written notice was served upon the mother, with a copy of the petition, on the day before the trial, and the step-father appeared. It was held there was notice in compliance with the statute, as opportunity was afforded to be present, and to apply for further time if not ready for the investigation.

5. JURY—*right to jury of twelve.* Under the act of 1879 relating to the industrial school, the party sought to be adjudged a dependent infant female is not entitled to a jury of twelve persons, the act only giving six jurors. That provision of the constitution that "the right of trial by jury as

heretofore enjoyed shall remain inviolate," does not apply in such a case, which is not a suit according to the course of the common law, but is purely a statutory proceeding, and under a statute enacted since the adoption of the constitution.

APPEAL from the County Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding.

Appellee filed a petition in the county court of Cook county, under section 3 of "An act to aid industrial schools for girls," approved May 29, 1879. (Laws 1879, p. 309.) The petition set forth that Winifred Breen, the appellant, was a girl nine years old; had repeatedly been picked up by the police and others while wandering about the streets at night; was a truant from school, and had not proper parental care, and was in imminent danger of ruin and harm, etc.

Three witnesses testified as to the character and habits of the girl, Winifred Breen, stating that she was without proper parental care; that she wandered upon the streets of Chicago at all hours of the day and night; that she had been frequently picked up by the policemen of the city, late at night and miles away from her usual place of abode, and had been confined all night in police stations; that she kept bad company, and was in great danger of being ruined; that the mother of the child is weak-minded, and at times insane, having on one occasion attempted to hang Winifred; that she was unfit to have the control of the child, and incapable of managing her; that the step-father is poor and an invalid, earning only a small salary, and is compelled to be absent from his home the entire day, and he found it impossible to control the girl, and that she had been guilty of thefts and falsehood. The fourth witness, Mrs. Beveridge, stated that she was president of the Industrial School for Girls; that the school is situated in Evanston, in Cook county, on a five-acre tract of beautiful rolling ground, over which the inmates have free range as a play-ground; that there is no more restraint

upon their liberty than that imposed upon children in an ordinary family or institution of learning; that they are taught ordinary household duties, sewing, and the ordinary branches of English education; that parents are permitted to visit their children when they desire, and that children are given places in private families whenever suitable places can be procured, but not without their and their parents' consent. The girl herself testified that she sometimes ran away; that her mother tried to hang witness, and then tried to hang herself; that she was afraid of her mother; that she knew about this industrial school and wanted to go there. The father of the child, if still living, appears to have been a worthless character,—a professional thief,—who when last heard from, three years ago, was at the Bridewell, and the mother was divorced from him.

The jury returned a verdict that Winifred Breen was a dependent girl, and that the facts set forth in the petition were true, and thereupon the county judge entered an order that said Winifred should be committed to said Industrial School for Girls, and appointed Mrs. Ellen Woodward, one of the vice-presidents of the school, guardian of the child, in accordance with a provision of the act. The county attorney, whom the court had appointed counsel for the girl, and who appeared for her, took an appeal to this court.

Section 3 of the act under which this proceeding was taken, is as follows: "Any responsible person who has been a resident of any county in this State one year next preceding the time at which the petition is presented, may petition the county court of said county to inquire into the alleged dependency of any female infant then within the county, and every female infant who comes within the following descriptions shall be considered a dependent girl, viz: Every female infant who begs or receives alms while actually selling or pretending to sell any article in public, or who frequents any street, alley or other place for the purpose of begging or

24—103 Ill.

receiving alms, or who, having no permanent place of abode, proper parental care or guardianship, or sufficient means of subsistence, or who for other cause is a wanderer through streets and alleys, and in other public places, or who lives with or frequents the company of, or consorts with, reputed thieves or other vicious persons, or who is found in a house of ill-fame, or in a poor house." The petition is to be verified by oath, and notice is to be given to the parents and guardian. The female infant is brought before the court, and if without counsel, it is made the duty of the court to assign counsel for her, and a trial is had before a jury of six. Section 2 declares: "The object of industrial schools for girls shall be to provide a home and proper training school for such girls as may be committed to their charge."

Mr. CONSIDER H. WILLETT, for the appellant.

Mr. JAMES K. EDSALL, and Mr. N. M. JONES, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is insisted that the law under which the proceeding was had is unconstitutional—first, as being in violation of the Bill of Rights as to personal liberty, in respect of the provision that no person shall be deprived of life, liberty or property without due process of law, and *The People* v. *Turner*, 55 Ill. 280, is relied upon as being a decisive authority in favor of appellant in this respect. That was an application by the father of a boy for a writ of *habeas corpus* to the superintendent of the "reform school" of Chicago, to free the boy from an alleged illegal restraint of his liberty, and it was held that the law providing for the commitment to that "reform school" was unconstitutional. That school was established under a statute different and much less careful in its provisions, and nearer in its approach to a criminal

enactment, than the one in question. The judge was the only one to decide in the matter. Criminals between six and sixteen years of age, convicted of crime punishable by fine or imprisonment, were confined there. That institution was regarded in that case as a place of confinement, and for punishment, and the commitment to it was regarded as imprisonment.

In the statute now under consideration, anxious provision is made for the due protection of all just rights. To begin, there must be the petition of a responsible person, verified by oath, setting forth the facts, and if there be a parent or a guardian, it must also show that the parent or guardian is not a fit person to have the custody of the infant, there must be notice to the parents, the child must be brought before the court, there is a trial as to the facts by six jurymen, defence by counsel is provided, proof is made before a court of record of the facts alleged, there is the verdict of a jury of six men, and if, by the 4th section, after the verdict of the jury the judge is of the opinion that the girl should be sent to the industrial school, then he may order that she be committed there. Provision is made for a discharge from the school, when proper, through the managers, and the Governor may at any time order a discharge. This institution is not a prison, but it is a school, and the sending of a young female child there to be taken care of, who is uncared for, and with no one to care for her, we do not regard imprisonment. We perceive hardly any more restraint of liberty than is found in any well regulated school. Such a degree of restraint is essential in the proper education of a child, and it is in no just sense an infringement of the inherent and inalienable right to personal liberty so much dwelt upon in the argument.

The power conferred under the act in question upon the county court is but of the same character of the jurisdiction exercised by the court of chancery over the persons and prop-

erty of infants, having foundation in the prerogative of the Crown, flowing from its general power and duty, as *parens patriæ*, to protect those who have no other lawful protector. (2 Story's Eq. Jur. sec. 1333.) That jurisdiction extends to the care and person of the infant, so far as is necessary for his protection and education, and upon this ground that court interferes with the ordinary rights of parents in regard to the custody and care of their children, for although, in general, parents are intrusted with the custody of the persons and the education of their children, yet this is done upon the natural presumption that the children will be properly taken care of, and will be brought up with a due education. But whenever this presumption is removed, and the parent is grossly unfit and fails in this respect, the court of chancery will interfere, and deprive him of the custody of his children, and appoint a suitable person to act as guardian, and to take care of them, and to superintend their education. (Ibid. sec. 1341.) The statute in question provides that if the court finds that the parent is not a fit person to have the custody of the infant, the court may appoint the president, or any one of the vice-presidents, of such industrial school the guardian of the infant, and such guardian shall permit such infant to be placed under the care and in the custody of such industrial school, and the court here accordingly made such appointment of guardian. It is a statute making provision for the needed control and care of female infants which they are found to be destitute of, and which parents should bestow, and when the superintendence in this respect, which is required, is assumed on the part of the State, there should be in the agency which the State makes use of, the same power of needful restraint in the child's care and education as belonged to the parent. The right to liberty which is guaranteed is not that of entire unrestrainedness of action. Civil government in itself implies an abridgment of natural liberty. "Civil liberty, which is that of a member of society,

is no other than natural liberty, so far restrained by human laws (and no farther) as is necessary and expedient for the general welfare." (1 Black. Com. 125.) It is not natural but civil liberty of which a person may not be deprived without due process of law. There are restrictions imposed upon personal liberty which spring from the helpless or dependent condition of individuals in the various relations of life, among them being those of parent and child, guardian and ward, teacher and scholar. There are well recognized powers of control in each of these relations over the actions of the child, ward or scholar, which may be exercised. These are legal and just restraints upon personal liberty which the welfare of society demands, and which, where there is no abuse, entirely consist with the constitutional guaranty of liberty. See Cooley's Const. Lim. 339, 342.

We find here no more than such proper restraint which the child's welfare and the good of the community manifestly require, and which rightly pertains to the relations above named, and find no such invasion of the right to personal liberty as requires us to pronounce this statute to be unconstitutional. The decision in 55 Ill. as to the reform school, we do not think should be applied to this industrial school. The courts in other States have sustained similar laws. *Ex parte Crouse*, 4 Whart. 11; *Roth & Boyle* v. *House of Refuge*, 31 Md. 329; *Prescott* v. *The State*, 19 Ohio St. 184; *Milwaukee Industrial School* v. *Supervisors of Milwaukee Co.* 40 Wis. 328.

It is objected that there was not reasonable notice given. The statute provides merely that notice to the parents shall be given. There was here written notice served upon the mother, with a copy of the petition, on the day before the trial. The step-father appeared. We think there was notice in compliance with the statute. There was opportunity to be present, and to apply for further time if not ready for the investigation.

A jury of twelve men was demanded and denied, and it is insisted there was error in this denial. The statute provides for a jury of only six. The constitutional provision that "the right of trial by jury, as heretofore enjoyed, shall remain inviolate," does not apply. This is not a proceeding according to the course of the common law, in which the right of a trial by jury is guaranteed, but the proceeding is a statutory one, and the statute, too, enacted since the adoption of the constitution. There was not, at the time of such adoption, the enjoyment of a jury trial in such a case. In reference to this subject generally, Judge Cooley, in his work on Constitutional Limitations, p. 319, remarks: "But in those cases which formerly were not triable by jury, if the legislature provide for such a trial now, they may doubtless create for the purpose a statutory tribunal composed of any number of persons, and no question of constitutional power or right could arise." And see *Ross* v. *Irving*, 14 Ill. 171.

The act requires the payment of $10 per month by the county for each girl sent from any county. It is insisted that this is in violation of the provision of the constitution that "the General Assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes," etc. This is a minor independent feature of the act, which, if invalid, would not affect the other distinct portions of the act, and hence its consideration is not necessary in this case. It will be time to consider it when the county makes resistance and presents the question for determination.

The judgment of the county court will be affirmed.

*Judgment affirmed.*


Mr. JUSTICE WALKER: I dissent to this opinion and judgment.