THE COUNTY OF McLEAN

*v.*

LAURA B. HUMPHREYS.

*Filed at Springfield September 28, 1882.*

1. INDUSTRIAL SCHOOL—*not sectarian, within meaning of constitutional prohibition.* There is nothing in the various provisions of the act of May 28, 1879, entitled "An act to aid industrial schools for girls," which authorizes or contemplates the organization of these schools for sectarian purposes, within the meaning of section 3, article 8, of the constitution, prohibiting any appropriation or pay from any public fund, or anything in aid of any church or sectarian purpose, by any public corporation, but on the contrary, it is expressly prohibited in the last section of the act.

2. If, notwithstanding this inhibition in the act, such a school should be prostituted to any church or sectarian purposes, the law affords ample means for a speedy correction of such an abuse of the act.

3. SAME—*constitution not to be so construed as to deprive the legislature of the power of protecting dependent and unfortunate infants.* It is the unquestioned right and imperative duty of every enlightened government, in its character of *parens patriæ*, to protect and provide for the comfort and well-being of such of its citizens as, by reason of infancy, defective understanding, or other misfortune or infirmity, are unable to take care of themselves, and all constitutional limitations must be so construed and understood as not to interfere with the proper and legitimate exercise of this important governmental function.

4. SAME—*act does not infringe constitutional guaranty of personal liberty.* The act of 1879, in relation to industrial schools for dependent infant females, is not obnoxious to the objection that it infringes upon the constitutional guaranty of the personal liberty of the citizen. The restraint which the act imposes is only such as is essential to the comfort and well-being of the unfortunate class brought within its provisions. All governmental and parental care necessarily imposes more or less wholesome restraint.

5. SAME—*remedy for abuses under act.* The claim that the act is not well guarded with a view of preventing abuses, is a matter that addresses itself more properly to the legislative than to the judicial department of the government, and if conceded to be well taken, affords no ground for declaring the act unconstitutional. If such objection is well founded, the constitution clothes the judiciary with ample authority to correct any abuses that may arise under the act.

6. COUNTY—*liable for expenses of keeping dependent infant female.* Where an order of the county court is duly and properly made, committing a dependent infant female to an industrial school, under the act of 1879 relating to industrial schools for girls, and is executed by those in charge of such a school to which the girl was sent, the county from which such person is sent will be liable for the reimbursement of the proper expenses of carrying out the order of the court.

APPEAL from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Mr. ROBERT B. PORTER, State's Attorney, and Mr. FRANK B. HENDERSON, County Attorney, for the appellant:

Appellee can not recover if the act of May 28, 1879, is unconstitutional.    Cooley's Const. Lim. side page 188, (4th ed.) p. 227; *Meagher* v. *County of Story,* 5 Nev. 244; *Strong* v. *Daniels,* 5 Ind. 348; *Sumner* v. *Beeler,* 50 id. 341.

The act of May 28, 1879, is unconstitutional—

*First*—Because it violates sec. 3, art. 8, by providing that counties shall pay towards the support of a school which, by the very terms of section 14 of the act, may be sectarian. Const. 1870, art. 8, sec. 3.

*Second*—Because it violates separate sections on page 82 of Hurd's Stat. 1881, by compelling counties to make donations to private corporations. Const. 1870.

*Third*—Because by it the legislature imposes taxes on counties for corporate purposes, in violation of sec. 10, art. 9, of the constitution of 1870.

*Fourth*—Because it conflicts with the general laws on paupers, and guardian and ward. Rev. Stat. 1874, sec. 16, chap. 107, p. 756; also, sec. 3, chap. 64, p. 558.

*Fifth*—Because it deprives an unfortunate girl of her liberty without her being found guilty of any crime, and without due process of law, in violation of sec. 2, art. 2, Bill of Rights, 1870; *People ex rel.* v. *Turner*, 55 Ill. 280.

*Sixth*—Because it deprives a county of its property without a chance for the county to defend, and without due process of law, in violation of sec. 2, art. 2, Bill of Rights, 1870.

*Seventh*—The word "person" includes a body corporate or politic—hence a county. Rev. Stat. 1874, clause 5, sec. 1, chap. 131, p. 1011.

*Eighth*—Because it deprives the girl charged, of the right of trial by a jury of twelve, in violation of sec. 5, art. 2, Bill of Rights, 1870.

*Ninth*—Because it deprives the county of a trial by jury, and any trial whatever, in a proceeding where the county is financially interested, in violation of sec. 5, art. 2, Bill of Rights, 1870.

Mr. A. E. DeMange, for the appellee:

The school in question is not sectarian, or in the interest of any church. Should it be so perverted, the Board of

Public Charities has the power to interfere. Laws of 1879, p. 309.

The expense of providing for the education of dependent girls is not in the nature of a donation, but a discharge of a public duty.

The act is not an infringement of the right of personal liberty. Civil liberty is natural liberty abridged, and enjoyed under reasonable municipal laws, made for the benefit of society. 1 Blackstone's Com. 125; Cooley on Const. Lim. 339.

The statute in question is similar to the statute of Wisconsin on the same subject, and the latter was held to be constitutional. *Milwaukee Industrial School* v. *Supervisors of Milwaukee County,* 40 Wis. 328; *Roth* v. *House of Refuge,* 31 Md. 330; *Ex parte Crouse,* 4 Whart. (Pa.) 11; *People* v. *Governors,* 18 How. Pr. (N. Y.) 409; *People* v. *Turner,* 55 Ill. 280.

Guardians may be appointed and removed without the intervention of a jury. 2 Story's Eq. Jur. secs. 1337, 1340; Rev. Stat. chap. 64, sec. 2.

Public corporations are subject to legislative control, and the legislature may impose public burdens on them. Dillon on Mun. Corp. sec. 10; *Hamilton County* v. *Mighels,* 7 Ohio St. 109.

Mr. Justice Mulkey delivered the opinion of the Court:

Under the provisions of the act of May 28, 1879, entitled "An act to aid industrial schools for girls," Mary E. Stoner, a female infant of the age of seven years, was brought before the county court of McLean county, at its October term, 1880, on the charge of being a dependent girl. The cause was submitted to a jury, who found the facts set forth in the petition to be true, and the court thereupon entered an order "that the said Mary E. Stoner be committed to the Industrial School for Girls, at South Evanston, to be in such school kept and

maintained until she arrives at the age of eighteen years, unless sooner discharged therefrom in the manner provided by statute." This order was duly executed, with respect to the commitment, by Laura B. Humphrey, the appellee, under the direction of the court, at an expense of $34. The county having refused, upon proper application, to reimburse appellee, she brought an action in the McLean circuit court against the county, which resulted in a judgment in her favor for the amount of her claim, to reverse which the county prosecutes this appeal.

No question is made as to the regularity of the proceedings under the Industrial School act, or as to the justness of appellee's claim, provided the provisions of that act are legally binding on the county; but appellee's claim is resisted solely on the ground the act in question is unconstitutional. First, it is claimed the act is in conflict with section 3, of article 8, of the constitution, which provides, that "neither the General Assembly, nor any city, town, township, school district or other public corporation shall ever make any appropriation, or pay from any public fund whatever, anything in aid of any church or sectarian purpose, or to help support or sustain any school, academy, seminary, college, university, or other literary or scientific institution, controlled by any church or sectarian denomination whatever; nor shall any grant or donation of land, money or other personal property ever be made by the State, or any such public corporation, to any church, or for any sectarian purpose." Upon a careful examination of the various provisions of the act, we fail to discover anything which authorizes or contemplates the organization of these industrial schools, for sectarian purposes, but on the contrary, by the last section of the act it is expressly prohibited. If, however, notwithstanding this inhibition, they should be prostituted to such purposes, the law affords ample means for a speedy correction of such an abuse of the act. In the present case there is no pretense

for the claim that the institution to which the subject of this controversy was committed, was, or is, organized or conducted in the interest of any particular church or religious organization. The provisions of the act extend to "every female infant who begs or receives alms while actually selling, or pretending to sell, any article in public, or who frequents any street, or alley, or other place, for the purpose of begging or receiving alms ; or who, having no permanent place of abode, proper parental care or guardianship, or sufficient means of subsistence ; or who, for other cause, is a wanderer through streets and alleys, and in other public places ; or who lives with or frequents the company of, or consorts with, reputed thieves, or other vicious persons ; or who is found in a house of ill-fame, or in a poor-house." It would be difficult to conceive of a class of persons that more imperatively demands the interposition of the State in their behalf than those we have just enumerated, and for whose benefit the act under consideration was adopted, and it would be a sad commentary on our State government, if it is true, as is contended, there is no constitutional power in the legislature to provide, by suitable legislation, for their education, control and protection. It is the unquestioned right and imperative duty of every enlightened government, in its character of *parens patriæ*, to protect and provide for the comfort and well-being of such of its citizens as, by reason of infancy, defective understanding, or other misfortune or infirmity, are unable to take care of themselves. The performance of this duty is justly regarded as one of the most important of governmental functions, and all constitutional limitations must be so understood and construed as not to interfere with its proper and legitimate exercise.

We perceive no force in the objection that the act in question is an infringement upon the personal liberty of the citizen, as guaranteed by the constitution. The restraints which the act imposes are only such as are essential to the comfort

and well-being of the unfortunate class of persons who are brought within its provisions. All governmental and parental care necessarily imposes more or less wholesome restraint, and we see nothing in the act which looks beyond this.

Assuming then, as we do, the legislature has the right to provide for the education, support and control of these unfortunate beings, it clearly has the right also to provide the necessary instrumentalities or agencies for the accomplishment of these objects. The claim that the act in question is not as well guarded, in some respects, as it might be, with a view of preventing abuses, even if well founded, is a matter that addresses itself to the legislative rather than the judicial department of government, and would be no ground for declaring the act unconstitutional. But conceding the claim to be well founded, we are nevertheless of opinion that the constitution clothes the judiciary with ample authority to correct any abuses that may arise under the act.

These general views fully meet all the objections urged against the act, and we therefore deem it unnecessary to further notice them in detail.

The conclusion reached in this case is, in our judgment, fully sustained by the authorities. *Milwaukee Industrial School* v. *Supervisors of Milwaukee County*, 40 Wis. 328; *Prescott* v. *The State*, 19 Ohio St. 185; *Roth* v. *House of Refuge*, 31 Md. 330; *Petition of Ferrier*, 103 Ill. 367.

The judgment of the court below will be affirmed, with costs.

*Judgment affirmed.*