STATE OF MINNESOTA *ex rel.* CARRIE OLSON *vs.* J. W. BROWN, Superintendent State Reform School.

50  353
f73   79

Argued June 6, 1892.  Decided July 1, 1892.

**State Reform School Legislation is Constitutional.**

The statutes, (1878 G. S. ch. 35, § 44, etc.,) and the various acts amendatory thereto, which confer upon justices of the peace power to commit infants, in consequence of incorrigibly vicious conduct, to the care and guardianship of the board of managers of the state reform school for terms exceeding a period of three months are not repugnant to the constitution, Art. 6, § 7, relating to the jurisdiction of probate courts, or to section 8 of the same article, relating to the jurisdiction of justices of the peace.

**The Delinquent is not Entitled to Trial by Jury.**

The mode of procedure pointed out in this legislation is not in violation of that portion of the fundamental law of the state which provides that the right of trial by jury shall remain inviolate.

**Practice under the Acts.**

Other questions, raised on *habeas corpus* proceedings, as to the regularity of certain proceedings which resulted in the commitment of an infant to the care and guardianship of said board of managers, considered and disposed of.

Appeal by relator, Carrie Olson, from an order of the District Court of Goodhue County, *Williston,* J., made April 5, 1892, remanding her minor son Oscar E. Olson to the custody of J. W. Brown, Superintendent of the State Reform School at Red Wing.

Carrie Olson of Waseca, related to the court that her son, Oscar E. Olson, fifteen years of age, was imprisoned and restrained of his liberty by respondent at the State Reform School; and she prayed that a writ of *habeas corpus* issue commanding him to have her son in court with the cause of such restraint. The writ was granted returnable January 7, 1892, at which time respondent produced the boy, and a certified copy of the record of his conviction, and the warrant for his commitment to the guardianship of the board of

managers of the school.    From the return and the evidence taken it appeared that the boy's father was dead, and that on June 24, 1891, he was convicted in the Municipal Court of the City of Waseca of incorrigible and vicious conduct and habits, and was by that court committed to the custody of the managers of the school; that the conviction was approved by the Judge of the District Court for the fifth judicial district, and that the boy was detained by the superintendent, by virtue of that conviction and the commitment issued thereon.    1878 G. S. ch. 35, § 44, Laws 1883, ch. 37.    He was remanded to the custody of the superintendent.    The Judge said:

"It is the duty of the state in cases where evil courses have been entered upon, to stretch forth its hand and rescue children from their evil surroundings, and place them in institutions where they will receive such mental, moral and physical training as will induce them to turn from the wrong and pursue the right, and become men and women, the pride, rather than the shame, of the republic.    In the exercise of such rights and the performance of such duties, the state has the right to break in upon the family circle and remove children therefrom and place them where they will be surrounded by better influences.    When the family becomes a training school of vice, the state has the right to interfere; if not, then it has not the right of self-preservation.

"For the purpose of enabling the state the better to perform its duty to those of its youths who have entered upon a vicious life, and become incorrigible, it erected and maintains an institution known as the State Reform School, in which it places, educates and trains that class.    In committing a youth to that institution, the justice of the peace does not appoint a guardian for him, but acts as the agent of the state, and by its express authority takes the child from his evil associates and places him where he will be subject to better influences.    This school is not a prison, but is what it name implies, a school.    Commitment to this institution is not punishment for crime.    The paramount object is the good of the infants.    They are placed there by the common guardian of the community.    The object is their reformation, education and training, both moral and physical; to develop the boy into a man, knowing and willing to per-

form the duties required of him as a citizen of the republic; to give him such care and training that when he attains his majority, he will be respected, not despised, by his fellow men. The child there receives that parental care and control which should have been exercised toward him by those whom he and the state had the right to assume would perform that duty."

*Sawyer, Abbott & Sawyer,* for appellant.

The statutes under which Oscar E. Olson was committed are strictly criminal. They provide for the conviction and punishment of offenders, not on the ground of misfortune, or under the pretense of charity, but as a punishment for positive crimes and vicious conduct. A justice of the peace has not the constitutional power to commit to the reform school for a period of more than three months. Nor has a justice of the peace jurisdiction over matters of guardianship. The right of the parent to resume the care and custody of his children convicted thereunder, is dependent upon the discretion of the officers of the reform school. The parent should be made a party to the proceedings. *Milwaukee Industrial School* v. *Supervisors, etc.,* 40 Wis. 328; *People* v. *Turner,* 55 Ill. 280.

Oscar E. Olson was deprived of his constitutional right to a jury trial. Const. Art. 1, § 4.

No justice of the peace has power to commit an infant unless he reduces all the evidence to writing and transmits it to the district judge, whose duty it is to examine it and approve or disapprove of the conviction. This was not done. *State* v. *Brown,* 47 Minn. 472.

*Moses E. Clapp,* Attorney General, and *H. W. Childs,* for respondent.

The legislation here involved is similar to that adopted in New York, Massachusetts, Maine, Connecticut, New Jersey, Pennsylvania, Michigan, Illinois, Indiana, Iowa and Wisconsin. The proceeding was purely statutory; and the commitment is not punishment. *Prescott* v. *State,* 19 Ohio St. 184; *House of Refuge* v. *Ryan,* 37 Ohio St. 197; *Farnham* v. *Pierce,* 141 Mass. 203. Such legislation is savagely assailed by Justice Thornton in *People* v. *Turner,* 55 Ill. 280.

But such views are unsound, and are not adhered to in the same court. *In re Ferrier*, 103 Ill. 367; *McLean County* v. *Humphreys*, 104 Ill. 378; *City of Mankato* v. *Arnold*, 36 Minn. 62.

COLLINS, J.   Appeal from an order dismissing a *habeas corpus* proceeding wherein the writ was directed to the superintendent of the state reform school, commanding that he produce one Oscar E. Olson, a minor son of the relator, said to be unlawfully restrained at said school.   Young Olson and one Connolly were brought before the municipal court of the city of Waseca on the charge of incorrigibly vicious conduct, and were committed to the guardianship of the board of managers of the reform school at the same time and on the same testimony.   The proceedings had in the municipal court, and as they were certified to the district judge, in so far as we were then advised, fully appear in a statement found in *State* v. *Brown*, 47 Minn. 472, (50 N. W. Rep. 920.)

But the technical points upon which the latter case was decided and the relator released from the reform school do not now arise; for the record in this case, as we view it, affirmatively shows that all the evidence introduced before the municipal court was reduced to writing, and transmitted to the judge of the district court, who approved the commitment.   The additional evidence upon this hearing in the district court was competent, and in no way tended to impeach the record of the municipal court.   There is nothing in the point that the municipal judge did not reduce to writing the questions propounded to the witness, but simply took the testimony in a narrative form.   Neither is there anything in the point that he transmitted a typewritten copy of the evidence to the district judge, instead of the original.

In proceedings to commit infants to the care and guardianship of the board of managers of the reform school, the right of the municipal court in question is derived through the statute under which it was organized, conferring upon it the authority, powers, and rights of a justice of the peace, under the general laws of the state.   It follows that, if a justice has no power to commit to the reform school, the municipal court for the city of Waseca has not, and the claim

is made by the relator that the statute by which this power is given
to justices is unconstitutional and void. We are therefore obliged
to consider the relator's contention that the legislation of this state,
whereby justices are authorized and empowered to commit infants
to the care and guardianship of the board of managers of the reform
school in consequence of incorrigibly vicious conduct, and for a time
exceeding three months, is not a valid exercise of legislative power,
under the constitution of this state. Two propositions are laid down
in support of this contention—*First*, that the authority is conferred
upon a justice of the peace to punish a criminal by imprisonment for
a period exceeding three months, contrary to the constitution, Art.
6, § 8; and, *second*, that jurisdiction in the matter of "persons under
guardianship" has been conferred on such justices, contrary to the
provisions of section 7 of the same article, by which jurisdiction over
such persons is granted unto another constitutional tribunal, the pro-
bate court.

The questions raised by the first of these propositions have often
been discussed by the judicial tribunals of this country. Legisla-
tion which, brushing aside and disregarding the views, wishes, or
supposed rights of natural guardians, has had for its object the fu-
ture welfare of the minor children of incapable and unworthy parents,
or the care, custody, and proper training of incorrigible and vicious
youth by the state, has occasionally been denounced with great
vigor by the courts. A notable example of this species of denuncia-
tion may be found in the opinion in *People* v. *Turner*, 55 Ill. 281,
written by Mr. Justice Thornton. But legislation of this character
has been adopted in nearly all of the northern states, and its valid-
ity has often been upheld. We do not propose to add to the very
many pages which, in the Reports and text-books, have been devoted
to the support of the position, now taken almost universally by the
courts, that a person committed to the care and custody of a board
in charge of an institution of the character of the Minnesota state
reform school is not "punished," nor is he "imprisoned," in the ordi-
nary meaning of those words. Hence the constitutional provision
which regulates and limits the jurisdiction of justices of the peace
in criminal matters has no application. We can do no better than

to call attention to some of the leading authorities on this subject, and to quote from the case first cited the clear language used therein by the late Chief Justice Ryan: *Milwaukee Industrial School* v. *Supervisors*, 40 Wis. 328; *Farnham* v. *Pierce*, 141 Mass. 203, (6 N. E. Rep. 830;) *Prescott* v. *State*, 19 Ohio St. 184; *House of Refuge* v. *Ryan*, 37 Ohio St. 197; *Roth* v. *House of Refuge*, 31 Md. 329; *Ex parte Crouse*, 4 Whart. 9; *In re Ferrier*, 103 Ill. 367; *McLean County* v. *Humphreys*, 104 Ill. 378; Tied. Lim. Police Power, ch. 13. In the Wisconsin case, commencing on page 337, Judge Ryan thus expressed his views: "And, in the first place, we cannot understand that the detention of the child at one of these schools should be considered as imprisonment, any more than its detention in the poorhouse,—any more than the detention of any child at any boarding school, standing, for the time, *in loco parentis* to the child. Parental authority implies restraint, not imprisonment. And every school must necessarily exercise some measure of parental power of restraint over children committed to it. And when the state, as *parens patriæ*, is compelled, by the misfortune of a child, to assume for it parental duty, and to charge itself with its nurture, it is compelled also to assume parental authority over it. This authority must necessarily be delegated to those to whom the state delegates the nurture and education of the child. The state does not, indeed we might say could not, intrude this assumption of authority between parent and child standing in no need of it. It assumes it only upon the destitution and necessity of the child, arising from want or default of parents. And, in exercising a wholesome parental restraint over the child, it can be properly said to imprison the child no more than the tenderest parent exercising like power of restraint over children. This seems too plain to need authority; but the cases cited for the respondent, and other cases, amply sustain our view."

We pass to an examination of the claim that, under the constitution, a justice has no power to place a person under the guardianship of this board of managers, because jurisdiction has been conferred solely upon the probate courts in all matters of guardianship.

When committing an infant to the care and custody of the board of managers of the reform school, the magistrate is not appointing a guardian for him, nor does such officer or the board of managers assume any control over his estate, if he has one. A proceeding of this nature would not stand in the way of, nor would it be prevented by, the appointment of a statutory or testamentary guardian,—the only guardian coming within the purview of the constitution. It is no more a violation of the fundamental law for the magistrate to commit a child to the guardianship of the managers of an institution of this kind than it would be for a competent court to appoint a guardian *ad litem* for him. The language of the constitution does not apply where the state acts as the common guardian of the community, exercising its power whenever the welfare of an infant demands it, or where the state acts in the legitimate exercise of its police power. Therefore the lawmakers were not prohibited from conferring jurisdiction in such cases upon any of the judicial officers of the state.

The mode and method of procedure, as fixed by statute and followed in this case, are also attacked by relator's counsel. The proceeding is wholly statutory, and the party proceeded against is not punished or imprisoned. What has been said heretofore in regard to the nature of the proceedings, as well as the views expressed in *City of Mankato* v. *Arnold,* 36 Minn. 62, (30 N. W. Rep. 305;) *State* v. *Harris, ante,* p. 128, (52 N. W. Rep. 387,)—disposes of the claim that Olson was deprived of his constitutional right to a jury trial.

It is not necessary for us to pass upon a further claim made by the relator, that in all such cases the parent or guardian or next friend must be made a party, and that because such parent or guardian or next friend stands charged in the complaint (1878 G. S. ch. 35, § 44, subd. 2) with moral depravity, or of being incapable or of unwillingness to care for and discipline the infant, the justice has no right to proceed until he had obtained jurisdiction over the parent or the guardian or the next friend, as the case may be.

There may be a stronger reason than the one suggested why the natural or legal guardian of the infant should be made a party to the proceeding in question, but the statute does not seem to contemplate it, and it is possible that it is not necessary. *Milwaukee Industrial*

*School* v. *Com.*, *supra; Fitzgerald* v. *Com.*, 5 Allen, 509. But from the record in this case it affirmatively appears that the relator herein, the only living parent of the boy, did appear in his behalf in the municipal court, and did take part in the proceedings which resulted in his commitment. She has no cause for complaint on that score.

This disposes of such of the assignments of error as are of importance, and our conclusion is that Olson is not improperly held at the reform school.

Order affirmed.

(Opinion published 52 N. W. Rep. 935.)