## Ex Parte Sanford Bartee.

### No. 3441. Decided March 3, 1915.

### Rehearing denied March 31, 1915.

**1.—Delinquent Child—County Court—Jurisdiction—Criminal Action.**

Where a complaint was filed against relator as a delinquent child in the County Court, that court had jurisdiction and the proceeding was not a criminal action, and this, although the criminal jurisdiction of the County Court had been transferred to the County Court at Law. Davidson, Judge, dissenting.

**2.—Same—Intent of the Law—Statutes Construed.**

The law for the control and detention of delinquent children is more in the nature .of providing guardianship for such children and to make it the duty of such guardian or court to see that the child is educated and properly trained, and the proceeding is in no sense a criminal case.

**3.—Same—State Juvenile Training School—Judgment.**

The original law providing for the State Institution for the Training of Juveniles was changed to the name of the State Juvenile Training School by the Act of the Thirty-third Legislature, First Called Session, and there is no merit in relator's contention that the judgment is void because the name of the institution was changed.

**4.—Same—Indictment—Complaint—Statutes Construed.**

The contention of relator that there is no authority under the. law to order him placed in the Training School of Juveniles until an indictment has been returned against him charging him with a crime, is untenable, as the complaint charging him with being a delinquent child under the Act of the Thirty-third Legislature was sufficient.

**5.—Same—Indeterminate Sentence—Judgment.**

Where the judgment adjudged relator a delinquent child under the age of sixteen years and committed him to the State Institution for the Training of Juveniles for an indeterminate term of not less than two nor more than five years, there was no error on that ground, as the present law provides for his detention for an indeterminate period of not more than five years; this is but an irregularity.

**6.—Same—Suspension of Sentence—Delinquent Child.**

Where the judgment showed that the order adjudging the relator a delinquent child was not suspended, the contention that the commitment was suspended is not sustained by the record.

**7.—Same—Constitutional Law—Felony—Statutes Construed.**

The Act of the Thirty-third Legislature with reference to delinquent children is not contrary to the provisions of the State and Federal Constitutions, and the law does. not seek to give the District and County Courts concurrent jurisdiction over crimes of the grade of felony and misdemeanor, but if it were

a felony, the law provides for a dismissal where the accused is a delinquent child. Following Sparks v. State, recently decided.

**8.—Same—Functions of District Judge Before Conviction—Constitutional Law.**

The law can provide before conviction for a district judge or any other officer to excuse or relieve one from the penalty assessed for a violation of the law of the grade declared to be a felony, and it is only after conviction that such authority is given to the Governor alone by the Constitution.

**9.—Same—Penal Code—Statutes Construed.**

Where the relator was tried on a complaint in the County Court as a delinquent child, he was not prosecuted for a criminal offense, and, therefore, the Act of the Legislature under which the proceedings was had is not in contravention of articles 1 and 3, title 1, Penal Code. See cases cited from other States construing similar statutes.

**10.—Same—Case Stated—Delinquent Child.**

Where relator was tried by the County Court of Dallas County upon a complaint alleging that he was a delinquent child and that he stole an automobile, and was adjudged a delinquent and committed to the State Institution for the Training of Juveniles from which he afterwards escaped and was afterwards rearrested, he could not be released from custody until he had served his time, and the contention that such judgment was invalid was not well taken. Davidson, Jurge, dissenting.

**11.—Same—Right of Appeal—Habeas Corpus.**

No direct appeal would lie in this character of case, but on habeas corpus an appeal would lie, or this court would have authority to issue an original writ.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robt. B. Seay.

Appeal from a habeas corpus proceeding asking release from a commitment to the State Juvenile Training School.

The opinion states the case.

*Wills, Adams & Triplett* and *A. S. Baskett,* for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.—Cited cases in opinion.

HARPER, Judge.—Appellant was tried by the County Court of Dallas County upon a complaint charging that he was a delinquent child, being under seventeen years of age, in that he did steal an automobile. This complaint was filed on December 10, 1913. On this complaint appellant was tried as a delinquent child by the judge of the County Court of Dallas County, adjudged a delinquent child under the age of sixteen years, and he was committed to the State Institution for the Training of Juveniles for an indeterminate term of not less than two nor more than five years. Under this judgment relator was conveyed to the State Industrial School at Gatesville by R. L. Chick, assistant probation officer of the County of Dallas, on the 23rd day of December, 1913, and there delivered to the superintendent of the State

Industrial School for Boys. The record further discloses that relator escaped from the school about the 21st day of last July, and was not apprehended until in December of last year. When found he was taken charge of by W. K. Reynolds as an escape from the State Industrial School, who intended to convey him back to said school, and would have done so, only that relator sued out a writ of habeas corpus before Judge Seay. Upon hearing the case Judge Seay remanded relator to the custody of Mr. Reynolds, and from which judgment he prosecutes this appeal.

Appellant assigns many reasons why he should be discharged, and why the judgment of the District Court should be reversed.

1. He alleges that the County Court of Dallas County had no jurisdiction to try the case, he contending that it was a criminal action, and the jurisdiction of the County Court had been transferred to the County Court at Law.

While it is true that the criminal jurisdiction of the County Court had been vested in the County Court at Law, yet we do not think this is a criminal action, for the law provides that if a criminal action is brought against a boy under seventeen years of age, the court may, if he deems it for the best, order the criminal action dismissed, and have him tried under a new complaint as a delinquent child. And the law provides that one who is found to be a delinquent child shall suffer none of the penalties or disqualifications of one who is adjudged a criminal. Upon a trial to decide whether or not a child is a "delinquent" as defined by the statute, the law provides that the court may make such orders as he deems best for the interest of the child. The law is intended to prevent children, who are under improper environments, from so remaining, and to place them in such surroundings as to prevent them from becoming criminals. It is more in the nature of providing guardianship for the children, and to make it the duty of such guardian to see that the child is educated and properly trained. It is in no sense a criminal proceeding, and the County Court of Dallas had jurisdiction specifically conferred on it by law to try such cases. The object and purpose of the school is stated to be: "That it shall be the duty of said board and superintendent to arrange that each student of said training school shall receive a reasonable amount of instruction in the school of letters and industrial branch each year. Each inmate shall be given definite instruction and training in some useful occupation. Each inmate shall be given such moral training and discipline as he is capable of receiving. The prime end to be sought by said board is to reform, educate and train the children committed to the institution into industrious and useful, law-abiding citizens, strengthen their self-control and place them in a moral environment that will build character and inculcate correct ideas of civic virtue and responsibility."

2. Relator's next contention is, that as the judgment ordered him carried to the "State Institution for the Training of Juveniles," the judgment is void, because no such institution is in existence. The law

which changed the name of the institution from "The State Institution for the Training of Juveniles" to the name of "The State Juvenile Training School" specifically provides in section 8 (of chap. 6, Acts 33rd Leg., 1st Called Session), that all inmates sentenced to the State Institution for the Training of Juveniles shall only be required to serve out their unexpired terms in said institution, thus clearly evidencing that it was the intent of the Legislature in changing the name of the institution to continue it as it theretofore existed with such modifications and changes as were provided for in the law.

3. The next contention is that there is no authority to order him placed in the Training School until an indictment has been returned against him charging him with a crime. The Act of the Thirty-third Legislature, Regular Session, chapter 112, and Special Session, chapter 6, authorizes a child to be proceeded against upon complaint duly filed, and if an indictment is returned, charging him with a criminal offense, for its dismissal, and proceedings to be had upon complaint charging him with being a delinquent child. The complaint was sufficient to charge relator with being a delinquent under the provisions of chapter 112, Acts of Regular Session of the Thirty-third Legislature.

4. That the judgment orders relator committed to the Training School for an indeterminate period of not less than two nor more than five years, in accordance with the provisions of the old law, would not render it void. The present law provides for his detention for an indeterminate period of not more than five years, and the judgment should be read in the light of the law as it now exists, and as it commits him for an indeterminate period that is now provided, it would be but an irregularity.

5. The judgment shows that the order was not suspended, and the contention that the commitment was suspended is not sustained by the record before us.

6. The next contention is that the entire Acts are unconstitutional and violative of the provisions of the State and Federal Constitutions. We do not think that an Act of the Legislature which provides that if a boy under seventeen and a girl under eighteen years of age shall commit an offense which is defined by the Criminal Code as an offense, upon making proof of their age, under an application to the court in which an indictment or information charging them with such an offense is pending, which provides that the judge of the court may order the criminal case dismissed, if he deems it advisable, and have such person placed where they will be properly reared and trained, is violative of any provision of the Federal or State Constitutions. The law does not seek to give the District and County Courts concurrent jurisdiction over crimes of the grade of felonies and misdemeanors. Of course, the County Court could not be given jurisdiction over a felony charge under our Constitution. The offense relator is alleged to have committed is not a felony. Sparks v. State, decided at this term of the court. But if it were a felony, the law provides for the dismissal of any charge of felony or misdemeanor, and for a complaint charging

those things which would show that relator was a delinquent child. The law can provide, *before conviction,* for a district judge or any other officer to excuse or relieve one from the penalty assessed for a violation of the law of the grade declared to be a felony. It is only *after conviction* that such authority is given to the Governor alone by the Constitution.

7. Appellant was not prosecuted for a criminal offense, and, therefore, the Act is not in contravention of articles 1 and 3, title 1, of the Penal Code. Appellant was only tried to determine whether or not he was such a child, and his environments such that the circumstances required that the State interpose and he be given an opportunity to become a law-abiding and useful citizen upon reaching manhood's estate.

Our able Assistant Attorney General has exhaustively reviewed the authorities in briefing many of the questions raised by relator, and we take the liberty of copying the following excerpts therefrom:

"The Supreme Court of Illinois, in the case of Lindsay et al. v. Lindsay et al., 100 N. E. Rep., 892, in a most able opinion rendered by Justice Farmer on February 20, 1913, uses the following striking language: 'It is said by the editor of the eleventh and latest edition of Wharton's Criminal Law that the Juvenile Court Act passed by the Legislature of the State of Illinois in 1899 is the first juvenile court Act, as such Acts are now generally known, adopted by any State. Similar Acts have since been adopted by several other States, and have been uniformly sustained as valid legislation, except in the State of Michigan, where the acts held invalid were subject to objections not found in the Illinois statute'—and I respectfully submit to this court that these objections are not found in our statute. 'Our statute and those of similar character treat children coming within their provisions as wards of the State to be protected rather than as criminals to be punished, and their purpose is to save them from the possible effects of delinquency and neglect to result in their leading a criminal career. The purpose of such legislation is, we think, rightfully claimed to be unquestionably in advance of previous legislation dealing with children as criminals.'

"Plaintiffs in error contended, among other things, in the Lindsay case, supra, first, that the Act known as the Juvenile Court Act was in violation of the Federal Constitution and the Constitution of Illinois; second, that it created a new court termed the 'Juvenile Court'; third, that it denied the constitutional right of trial by jury; fourth, that it deprives children and the parents of children of liberty, property, and the right to the pursuit of happiness, without due process of law; and, fifth, that it reduced the child to a state of involuntary servitude in cases other than as a punishment for crime. Further on in this opinion the court said: 'Our statute does not, as contended, create a new court unauthorized by the Constitution. The decree which this writ of error is sued out to review was rendered by a judge of the Circuit Court of Cook County, designated by the other judges of said court, pursuant to authority conferred by the Act, to hear causes arising under said Act.

The judge so sitting is a circuit judge and the court in which the proceedings were held is a Circuit Court.'

"In the case of Commonwealth v. Fisher, 62 Atl. Rep., 198, the Supreme Court of Pennsylvania, in a similar case, held: 'That the Act did not create a new court; that the court of quarter sessions was a constitutional court; and the Legislature, recognizing it as an appropriate one upon which to confer jurisdiction in the care of neglected and unfortunate children, recognized by the State as its wards and requiring its .protection, had the constitutional power to confer such jurisdiction upon that court.'

"Again, in the Lindsay case, supra, the court said: 'Our statute gives Circuit and County Courts concurrent jurisdiction in cases arising under it; and, while it provides that the court exercising the powers and jurisdiction conferred by the act may for convenience sake be called a Juvenile Court, it does not create a new court but delegates powers to constitutional courts already existing. The prerogative of the State, arising out of its power and duty, as parens patriae, to protect the interests of infants, had always been exercised by courts of chancery. In Wellesley v. Wellesley, 2 Bligh (N. S.), 124, Lord Beresford said the right of a chancellor to exercise such powers had not been questioned in 150 years. This jurisdiction is by the Juvenile Court Act conferred upon Juvenile Courts.'

"Further quoting from the Lindsay opinion, supra: 'Section 2 of the Act under consideration authorizes a trial by a jury of six upon the demand of any person interested, or the judge may of his own motion order a jury of the same number to try the case. This, it is claimed, is not such a jury as the Constitution guarantees. This contention of plaintiffs in error, and also the contention that the act deprives the child of his right to personal liberty, were decided contrary to the position of plaintiffs in error in Petition of Ferrier, 103 Ill., 367, and County of McLean v. Humphreys, 104 Ill., 378. In the Ferrier case, Winifred Breen, a girl nine years old, was found to be a truant from school, without proper parental care, and in imminent danger of ruin and harm. In a proceeding in the County Court under "An Act to aid industrial schools for girls," passed in 1879, she was committed to an industrial school for girls at Evanston, and one of the vice presidents of the school was appointed her guardian, in accordance with the provisions of the Act. That Act authorized a trial by a jury of six. It was contended in this court that the Act violated the constitutional provision that no person should be deprived of liberty without due process of law. This court held that the jurisdiction conferred by the Act upon the County Court was the same character of jurisdiction exercised by courts of chancery over the persons and property of infants, having its foundation in the prerogative of the State flowing from its general power and duty, as parens patriae, to protect those who have no other lawful protector. The court said: "The right to liberty which is guaranteed is not that of entire unrestrainedness of action. Civil government in itself implies as abridgment of natural liberty. 'Civil

liberty, which is that of a member of society, is no other than natural liberty, so far restrained by human laws, and no farther, as is necessary and expedient for the general welfare.' 1 Blackstone's Com., 125.   It is not natural, but civil, liberty of which a person may not be deprived without due process of law.   There are restrictions imposed upon personal liberty which spring from the helpless or dependent condition of individuals in the various relations of life, among them being those of parent and child, guardian and ward, teacher and scholar. . . . These are legal and just restraints upon personal liberty, which the welfare of society demands, and which, where there is no abuse, entirely consist with the constitutional guarantee of liberty.   See Cooley's Const. Lim., 339, 342.   We find here no more than such proper restraint which the child's welfare and the good of the community manifestly require, and which rightly pertains to the relations above named, and find no such invasion of the right to personal liberty as requires us to pronounce this statute to be unconstitutional."   On the trial of the case before the County Court, a jury of twelve men was demanded and was denied.   The statute, as we have said, provided for trial by a jury of six.   Upon this question the court said: "The constitutional provision that 'the right of trial by jury, as heretofore enjoyed, shall remain inviolate' does not apply.   This is not a proceeding according to the course of the common law in which the right of a trial by jury is guaranteed, but the proceeding is a statutory one, and the statute, too, enacted since the adoption of the Constitution.   There was not, at the time of such adoption, the enjoyment of a jury trial in such a case.   In reference to this subject, generally, Judge Cooley, in his work on Constitutional Limitations, page 319, remarks: 'But in those cases which formerly were not triable by jury, if the Legislature provide for such a trial now, they may doubtless create for the purpose a statutory tribunal composed of any number of persons, and no question of constitutional power or right could arise.' " '

"In County of McLean v. Humphreys, 104 Ill., 378, where the validity of the Illinois Act was again attacked, the court said: 'It would be difficult to conceive of a class of persons that more imperatively demands the interposition of the State in their behalf than those we have just enumerated, and for whose benefit the Act under consideration was adopted; and it would be a sad commentary on our State government if it is true, as is contended, there is no constitutional power in the Legislature to provide, by suitable legislation, for their education, control, and protection.   It is the unquestioned right and imperative duty of every enlightened government, in its character of parens patriae, to protect and provide for the comfort and well-being of such of its citizens as, by reason of infancy, defective understanding, or other misfortune or infirmity, are unable to take care of themselves.   The performance of this duty is justly regarded as one of the most important of governmental functions, and all constitutional limitations must be so understood and construed as not to interfere with its proper and legitimate exercise.   We perceive no force in the objection that the

Act in question is an infringement upon the personal liberty of the citizen, as guaranteed by the Constitution. The restraints which the Act imposes are only such as are essential to the comfort and well-being of the unfortunate class of persons who are brought within its provisions. All governmental and parental care necessarily imposes more or less wholesome restraint; and we see nothing in the Act which looks beyond this. Assuming, then, as we do, the Legislature has the right to provide for the education, support, and control of these unfortunate beings, it clearly had the right also to provide the necessary instrumentalities or agencies for the accomplishment of these objects.'

"I have quoted extensively from the three Illinois cases above cited for the reason that their statute is similar to ours and for the further reason that their Act was passed after their Constitution was adopted and so was ours; and for the further reason that our statute provided, almost verbatim, the same definition as to what constitutes a delinquent child that their statute does. Furthermore, their statute provided the same as ours, that a jury of six could be had upon demand of any person interested. And I quote these cases for the further reason that these Illinois decisions (Illinois being the first State to pass a Juvenile Act) base the constitutionality of said Act upon the fact that matters of this kind are probate proceedings; that County Courts have, from time immemorial, had jurisdiction in probate matters. And our Texas statute bases it upon the same principle of law, for the very Act itself provides that the child may, at the discretion of the judge, be placed in any private home, to be visited at various intervals by the *probation* officer. The very word of the statute in creating the position of probation officer, shows clearly that the Legislature regarded same as probate proceedings, and regarded a delinquent child as a ward of the State, in need of its protection and education, and not as a criminal to be punished in a penal institution. The Illinois statute was held constitutional.

"In the case of Pugh v. Bowden, 45 So. Rep., 499, the Florida Juvenile Act was held constitutional. In the case of Mill v. Brown, 88 Pac. Rep., 609, the Utah Juvenile Act was held constitutional. In the case of Ex parte Sharp, 96 Pac. Rep., 563, the Idaho Juvenile Act was by the court held constitutional.

"Acts of other States, not known as Juvenile Court Acts, but authorizing the State to take the custody of neglected, abandoned, and delinquent children and commit them to institutions established and maintained for their care, and authorizing them to be placed in good homes to be selected by those to whose custody they were committed, have been frequently before the courts, and have almost uniformly been sustained. Whalen v. Olmstead, 23 Atl. Rep., 964 (Conn.); State v. Kilvington, 45 S. W. Rep., 433 (Tenn.); State v. Brown, 52 N. W. Rep., 935 (Minn.); Board of Children's Guardian, etc., v. Shutter, 34 N. E. Rep., 665 (Ind.); In re Kelly, 25 N. E. Rep., 615 (Miss.); see also chapter on Juvenile Courts in the 11th edition of Wharton's Criminal Law.

"In the ablest case which I have been able to find bearing on this

subject, viz: the Lindsay case, supra, that case was reversed, after holding that said Act was in every particular constitutional, upon the one ground that relator's mother was not shown by the evidence to be an improper person to be guardian of her child. But that question is not in the case now before this court. The authorities are very slow to hold that a child can be taken away from its parents, who by all law, both human and divine, are its natural guardians. The authorities, wherever and whenever that question has been raised, seem to hold with the case of Ex parte Percy McDowell, recently decided by this court and recorded in Opinion Book, vol. 15, p. 401. In the Percy McDowell case Judge Davidson, in a most excellent and well considered case, speaking for the court, said: 'Without going into a discussion of the constitutional questions or how far the Legislature may go in defining what it takes to constitute a delinquent child and the disposition to be made of him by the courts under that theory, we are of opinion that the Legislature had left it discretionary with the court trying the case as to the disposition of the child. Of course, legislation should be cautiously passed which undertakes to take from the parent the custody of their children. It is striking close at the bottom principle of society to take from the parents the custody and care of their children, and in the mind of the writer the facts ought to show first clearly and conclusively that the parents were not fit persons for raising their children. Society, it has been said, has a sufficient interest in the welfare of children to guard against viciousness in their training by taking charge of them in early life and training them for their proper sphere in society, but this should always be done cautiously and carefully, and to the best interest of the children.' Judge Davidson then quotes article 1203 of our Revised Statutes. Further speaking for the court, Judge Davidson says: 'It would seem from these provisions that the court trying the case has the right to control, manage and direct the movements of the child as well as those to whom he has committed the custody of the child.'

"In Mason v. Barnett (Wash.), 3 Kreider, 609, January 21, 1892, it is said that homeless and incorrigible minors committed to the State reform school 'are not subject to the penal laws of the State, have no right to trial by jury, . . . and do not come within pardoning power, any more than persons committed to the insane asylum. They are wards of the State, which stand to them in loco parentis, and whose courts are its agent to make commitment, after which the trustees take full charge and control them.' The summary commitment by virtue of a statute of an incorrigible minor to a house of refuge is not imprisonment without 'due process of law.' See Ex parte Crouse, 4 Whart., 9. In the Ex parte Crouse case just cited the court said: 'The house of refuge is not a prison, but a school. Where reformation, and not punishment, is the end, it may indeed be used as a prison for juvenile convicts who else would be committed to a common gaol; and, in respect to these, the constitutionality of the Act which incorporates it stands clear of controversy.' And again: 'As to abridgment of indefeasible

rights by confinement of the person, it is no more than what is borne, to a greater or less extent, in every school; and we know of no natural right to exemption from restraints which conduce to an infant's welfare.'

"The decision in Roth v. House of Refuge, 31 Md., 329, is based entirely upon and follows Ex parte Crouse, supra.

"In Jarrard v. State, 116 Ind., 98, it is said: 'We think it settled in accordance with principle that the Legislature has power to provide for the reformation of boys who are entering upon a career of wickedness, by prescribing measures for committing them to a reformatory institution.'

"The Ohio statute authorizes a grand jury to whom any accusation is made against a minor under sixteen years to return to the court that such minor is a proper subject for commitment to the house of refuge, and provides that the court shall thereupon order such commitment. It is held that such commitment does not infringe upon the constitutional right of trial by jury, or the rights of an accused in criminal prosecutions. See Prescott v. State, 19 Ohio St., 184.

"Again: The provision for the commitment of homeless children is valid, although no notice is required to be given to parents, but the necessity of detention can be inquired into at any time on habeas corpus. House of Refuge of Cincinnati v. Ryan, 37 Ohio St., 197. In this last case it is said: 'The commitment is not designed as a punishment for crime, but to place destitute, neglected, and homeless children, and those who are in danger of growing up as idle and vicious members of society, under the guardianship of the public authorities, for their proper care, and to prevent crime and pauperism. As to such infants, it is a home and a school, not a prison.'

"In Farnham v. Pierce, 141 Mass., 203, a statute authorizing the summary commitment of minors who are made to appear to any magistrate to be without salutary control is held to be not in conflict with the Declaration of Rights, but that such commitment is subject to be terminated by a showing by the parent that cause for it does not exist.

"In the case of Ex parte Liddell (Cal.), 93 Cal., 633, 16 L. R. A., 692, the court says that the power of the State is clear 'to arrest the downward tendency of those who have offended against its laws and manifested a disposition to follow a criminal career, by placing them in an institution where they will receive the care, education, and discipline necessary to prepare them for honorable citizenship.'

"In the case of Ex rel. Carrie Olson v. Brown, 16 L. R. A., 691, in a very able opinion of the Minnesota Supreme Court, rendered by Justice Collins, the court said: 'We do not propose to add to the very many pages which, in the reports and text-books, have been devoted to the support of the position, now taken almost universally by the courts, that a person committed to the care and custody of a board in charge of an institution of the character of the Minnesota State reform school is not "punished," nor is he "imprisoned," in the ordinary meaning of those words. Hence, the constitutional provision which regulates and limits the jurisdiction of justices of the peace in criminal matters had

no application. We can not do better than to call attention to some of the leading authorities on this subject, and to quote from the case first cited the clear language used therein by the late Chief Justice Ryan.' Then follow numerous authorities, and the words of Judge Ryan, as expressed in the Wisconsin case, supra, are given as follows: 'And in the first place, we can not understand that the detention of the child at one of these schools should be considered as imprisonment, any more than its detention in the poorhouse,—any more than the detention of any child at any boarding school, standing, for the time, in loco parentis to the child. Parental authority implies restraint, not imprisonment. And every school must necessarily exercise some measure of parental power of restraint over children committed to it. And when the State, as parens patriae, is compelled, by the misfortune of a child, to assume for it parental duty, and to charge itself with its nurture, it is com- pelled also to assume parental authority over it. . . . The State does not, indeed we might say, could not, intrude this assumption of authority between parent and child standing in no need of it. It as- sumes it only upon the destitution and necessity of the child, arising from want or default of parents. And in exercising a wholesome parental restraint over the child, it can be properly said to imprison the child no more than the tenderest parent exercising like power of restraint over children. This seems too plain to need authority; but the cases cited for the respondent and others amply sustain our view.'

"In the well considered case of Marlow v Commonwealth (Ky.), 133 S. W. Rep., pp. 1137 et seq., Justice Lassing, having under consid- eration the Juvenile Court Act of Kentucky,—which is very similar to ours—and in a case wherein three grounds were relied on for re- versal: first, that the creation of the Juvenile Court is not authorized by the Constitution; second, the judgment of the court, being for the confinement of the delinquent for an indeterminate period or until she reached her majority, is the imposition of such punishment as clearly authorizes an appeal under the Code regulating criminal practice; and third, that it was contended that the Act was unconstitutional in that it denied to the delinquent the right of trial by jury,—held: first, that the Act did not create a new court but simply conferred additional powers upon the County Court, and, second, that since the Act itself contained no provision for appeal in such cases, no appeal would lie, and that any effort at release would have to be instituted in a habeas corpus proceeding before the court.

"In regard to the matter of appeal in the Marlow case, supra, the court said: 'The Juvenile Court Act is a complete compendium of the law upon this subject, and, no provision being made therein for an appeal, the trial judge properly held that no appeal could be prosecuted from the order of the County Court. If, in its practical application, the Act is found to be incomplete or imperfect, the remedy lies in an appeal to the Legislature for relief in the shape of an amendment authorizing. an appeal from the action of the County Court. Until

such step has been taken, the courts are without power to grant the relief asked.'

"Further speaking, the court said that the Act under consideration contained the following language: 'This Act shall be liberally construed to the end that its purpose may be carried out, towit, that the child would be cared for as would be done by a court of chancery and that it may be trained and disciplined; that the care, supervision and discipline of the child shall approximate as nearly as may be that which should be given by its parents. The proceedings involving the child shall not be deemed to be criminal proceedings and the child shall not be considered as a criminal, but as a child in need of aid, encouragement, and guidance.' I call the court's attention to this language for the reason that the concluding article of our statute, Revised Civil Statutes of 1911, page 471, reads as follows: 'This chapter shall be liberally construed, to the end that its purposes may be carried out; that is, that the interests of the child and its reformation shall, at all times, be the object in view. of proceeding against it.'

"Further speaking in the Marlow case, supra, the court says: 'We may premise our citation of authorities, however, by a general statement that this statute is clearly not a criminal or penal statute in its nature. Its purpose is rather to prevent minors under the age of sixteen from prosecution and conviction on charges of misdemeanors, and in that respect to relieve them from the odium of criminal prosecution and punishment. Its object is to confer a benefit on both the child and the community in the way of surrounding the child with better and more elevating influences, and of educating and training him in the direction of good citizenship, and thereby saving him to society and adding a good and useful citizen to the community. . . . It is well enough, perhaps, to say here and now that the Constitution grants no absolute right of appeal from an order or judgment of a probate court.'

"And again: 'Since the right of appeal is purely a matter of legislative discretion, and the Legislature has not seen proper to provide for an appeal in cases of this character, and the proceeding is not criminal in its nature, appellant is afforded no ground for complaint because the Circuit Court dismissed her appeal.'

"In the case of Reynolds v. Howe, 51 Conn., 472, where a similar question was presented, the court said: 'But, as we have shown, the boy is not proceeded against as a criminal. Nor is confinement in the State Reform School a punishment, nor in any proper sense imprisonment. It is in the nature of parental restraint. It is a mode of education to usefulness; compulsory, but not for that reason improper; and the restraint is a necessary incident of the compulsory education. It is all made necessary by the corrupting influences that surround and are likely to control the boy, and by the need of society for protection; and that necessity justifies the proceeding. To make restraint and instruction of any permanent value, they must be continued for a long time. Habits are not changed in a month; not often in a year. This

is specially true of bad habits. The attempt to reform viciously inclined boys would be an utter failure if limited to a few months.'

"The Marlow case, supra, is cited in addition to the other authorities mainly because, while this court is passing upon the validity and constitutionality of this statute, and while all of relator's objections are being considered, I desire on the part of the State to raise the question that since no appeal from the action of the trial judge in committing a minor to the State Industrial School for Boys at Gatesville is provided for in our statute, no appeal will lie in this State in such a case; and that this court will only inquire into such matters on habeas corpus proceedings. I cite the Marlow case, supra, in support of this proposition.

"I respectfully submit that this case should be affirmed and relator returned to the State Industrial School for Boys at Gatesville, Texas, in accordance with the original commitment of the trial judge, and that this Act is constitutional."

In passing on the authorities cited by the Assistant Attorney General, we wish to say that we do not think an appeal would lie to this court from a trial adjudging one a delinquent child, but that on habeas corpus an appeal would lie, or we would have authority to issue an original writ, to determine whether or not one had been tried in accordance with the provisions of this law, and whether or not one was illegally restrained of his liberty.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE.—I said in the recent case of McCallen v. State, decided by Presiding Judge Prendergast, that I thought the Juvenile Act was not intelligible to such extent that it ought to be held inoperative. The incongruities are made the more apparent by each succeeding opinion which upholds it.

[Rehearing denied March 31, 1915.—Reporter.]