*In the matter of the Petition of* HENRY E. SANDERS *for a Writ of Habeas Corpus.*

1. STATE REFORM SCHOOL—*Valid Statute.* Chapter 129, Laws of 1881, (¶¶ 6513–6529, Gen. Stat. of 1889,) is not unconstitutional by reason of conflict with § 16, article 2, of the constitution; and the title of the act providing "for the organization and management of the state reform school" is broad enough to include the provisions of the act permitting boys under the age of 16 to be placed in or committed to the school by courts of record, including probate courts.

2. CERTAIN WORDS, *Construed.* The words, "who may be liable to punishment by imprisonment," in the first subdivision of § 4, chapter

| 53 | 191 |
| 53 | 205 |
| 53 | 191 |
| 55 | 376 |
| 53 | 191 |
| 57 | 245 |
| 53 | 191 |
| 64 | 81 |
| 53 | 191 |
| e67 | 669 |
| 67 | 670 |
| 53 | 191 |
| e71 | 270 |
| 53 | 191 |
| 75 | 852 |

129, Laws of 1881, may be construed as, "who may be subject to punishment by imprisonment." With this construction, that provision of the act is also constitutional.

3. PROBATE JUDGE — *Authority to Commit.* A probate judge has no authority, under the first subdivision of § 4 of chapter 129, Laws of 1881, to commit a boy under 16 years of age, without his consent, and against the objections of his parents, to the reform school, who is charged only upon a complaint filed with him with the specific crime of burglary, when such boy has not been previously convicted of the offense by some court having jurisdiction to hear and try the same.

*Original Proceeding in Habeas Corpus.*

ON November 29, 1893, the following complaint, duly verified, was filed with the probate judge of McPherson county:

"STATE OF KANSAS, } ss. *In the probate court.*
McPHERSON COUNTY, }

"E. F. Haberlein, being duly sworn, on oath says, that Robert Hunt and Edward Sanders are boys under the age of 16 years; that said Robert Hunt and Edward Sanders are liable to punishment by imprisonment, under the laws of this state, for the offense of burglary; that is to say, that on the 28th day of November, 1893, and in the nighttime of said day, in the county of McPherson and state of Kansas, said Robert Hunt and Edward Sanders did then and there unlawfully, feloniously and burglariously break into and enter the store of the said E. F. Haberlein, in which store certain goods, wares, merchandise and other valuable things were then and there kept and deposited, with the intent the said goods, wares, merchandise and other valuable things in said store then and there being to steal, take, and carry away.

ED. F. HABERLEIN.

"Subscribed and sworn to before me, this 29th day of November, 1893.      J. W. WALKER, *Probate Judge.*"
      [SEAL.]

A warrant was issued, the boys were arrested, and five days' notice of the time of hearing the complaint was given to the parents. At such date the boys appeared, as did the county attorney, the father and mother of Robert Hunt, and their private counsel, Messrs. Grattan & Grattan, the father of Henry E. Sanders, and his counsel, Milliken & Galle.

The parents of Robert Hunt consented that the court should commit him to the reform school, and, through their private counsel and the county attorney, vigorously urged that both boys should be so committed.    The father of Henry E. Sanders personally and by counsel, so far as he was concerned, objected thereto, and insisted, that inasmuch as there was no other accusation against him than that of burglary, and that as his father not only refused to consent, but objected to the court considering the charge, and as he had never been tried or convicted of the offense charged, that the court had no power or jurisdiction to try him therefor.    The court overruled such objections, and proceeded to inquire into the case, when a jury trial was demanded by the Sanderses, father and son, which was refused, and the court, after hearing the evidence, found the charge of the complaint to be true, and that Robert Hunt was 14 and Henry E. Sanders 13 years of age, and that they were both proper subjects for commitment to the reform school, and accordingly so committed both of them until their majority, unless sooner discharged as permittted by law.  .  .  .    A warrant was placed in the hands of J. W. Freeborn, sheriff of McPherson county, to convey them to the school, but, before it was executed as to Henry E. Sanders, a writ of *habeas corpus* was sued out by him in this court, returnable on the 3d day of January, 1894, at which time the sheriff produced the child in court, justifying his detention and restraint by reason of the complaint, warrant, and proceedings.    The case was submitted upon the record.    The opinion herein was filed at the session of the court in April, 1894.

*Milliken & Galle,* for petitioner:

Our contention is, that the probate court had no jurisdiction to commit the child: First, because the case was not brought within the provisions of the statute.    Gen. Stat. of 1889, ¶ 6516.    Second, because said act is unconstitutional.

The respondent justifies the detention and restraint under proceedings had under the first subdivision of this act.    The

whole contention depends upon what is meant by the words "who may be liable to punishment by imprisonment." We think no one can be said to have incurred such liability until he shall have had a trial according to the constitutional provisions and prescribed forms of criminal procedure. Liable means responsible, obliged, bound, answerable. An incurred liability is distinguished from an event possible or likely to occur. For example: "He was held liable upon the note or contract," or for contempt or to punishment.

The constitutionality of the law upon the first proposition depends wholly upon whether or not the proceedings had by the probate court are a trial, within the meaning of §§ 5 and 10 of the bill of rights, and this depends somewhat upon whether or not the commitment to the reform school of a boy charged with a crime and so tried is punishment.

As to the distinction between commitment for crime and for want of proper parental care, which is the pivotal point in this case, § 80 of Hochheimer on the Custody of Infants says:

"The principle upon which legislation authorizing the commitment of infants without proper parental care or guardianship to industrial schools and similar institutions is upheld does not extend to authorize the commitment of infants to juvenile institutions as a punishment for the commission of crime without the observance of all the regular formalities of criminal procedure."

On page 52 of 30 Central Law Journal, this author, in a leading article, reaffirms the above doctrine in these words:

"When the object of the restraint or imprisonment in any institution is punished for crime, a minor cannot be proceeded against or committed without the observance of all the regular formalities of criminal procedure. The constitutional guaranties of jury trial, due process of law, and the like, apply with equal force in these cases as in the case of adult offenders."

See, also, *Ex parte Crouse*, 4 Whar. 9; *People v. Turner*, 55 Ill. 280; *McLean v. Humphreys*, 104 id. 378; *Prescott v. The State*, 19 Ohio St. 184; *The State v. Ray*, 55 Am. Rep.

458; *In re Ferrier*, 103 Ill. 367; *In re Ryan*, 37 Ohio St. 197; *Farnham v. Pierce*, 141 Mass. 203; *The State, ex rel., v. Brown*, 52 N. W. Rep. (Minn.) 925; *In re Mason*, 28 Pac. Rep. (Wash.) 1025; *Industrial School v. Supervisors*, 40 Wis. 328; *Roth v. House of Refuge*, 31 Md. 329; *Commonwealth v. Horregan*, 127 Mass. 450.

While the title and subject-matter are to be liberally construed to sustain legislation, it is mandatory upon the courts, when in conflict with this provision, to declare them void, to guard against the abuses intended to be prevented. Suth. Stat. Cons., § 92; *The State v. Barrett*, 27 Kas. 213; *Comm'rs of Sedgwick Co. v. Bailey*, 13 id. 600.

The act is broader than its title. *Shepherd v. Helmers*, 23 Kas. 509; *Swayze v. Britton*, 17 id. 625; *Comm'rs of Sedgwick Co. v. Bailey*, 13 id. 600.

If the statute in controversy confers a jurisdiction upon the probate court as a court that is not within the limits prescribed by the constitution, it contravenes article 3 of § 8, and is void. There is no language in the act that by any possible construction can be interpreted to mean that his acts are those of the judge. It is "courts of record and probate courts" that have authority to act, and everywhere that the term is used it is the "court," not the judge, that is named. The "court" is to be "satisfied that the complaint is true," and that upon the "final hearing" renders the judgment of commitment, etc.

*Chas. W. Webster*, for respondent:

The petitioner contends that the proceedings had by the probate court in this case were a trial, within the meaning of §§ 5 and 10 of the bill of rights. An examination of the authorities plainly shows that the position of the petitioner cannot be maintained. In our opinion, the words "all prosecutions," as used in § 10 of the bill of rights, were intended to mean only all criminal prosecutions for violations of the laws of the state. *The State, ex rel., v. City of Topeka*, 36 Kas. 86. See, also, *The State, ex rel., v. Durein*, 46 Kas. 695.

"An act of the legislature providing for the committing to an industrial school of dependent infant girls found begging, etc., is not unconstitutional as being in restraint of personal liberty, nor because a trial by jury is not accorded." *In re Ferrier*, 103 Ill. 367 (42 Am. Rep. 10); *Ross v. Irving*, 14 Ill. 171. See, also, *Ex parte Crouse*, 4 Whar. (Pa.) 9.

"The institution to which they are committed is a school, not a prison; nor is the character of their detention affected by the fact that it is also a place where juvenile convicts may be sent who would otherwise be condemned to confinement." *Prescott v. The State*, 19 Ohio St. 188.

A reform school is not a penal institution, and, in case of conviction for crime, sentence is only suspended, and the offender committed for the purpose of being reformed. *In re Mason*, 28 Pac. Rep. (Wash.) 1025. The mode of procedure pointed out in this legislation is not in violation of the fundamental law of the state which provides that the right of trial by jury shall remain inviolate. *The State, ex rel., v. Brown*, 52 N. W. Rep. (Minn.) 935.

The title to the act contains the one broad subject, "a reform school," and everything found in the act is germane to such subject. The one object of the act was to determine what boys needed reforming, and to provide a place for their reformation.

See Cooley, Const. Lim. 144; *The State v. Barrett*, 27 Kas. 213; *The State v. Bush*, 45 id. 140; *Woodruff v. Baldwin*, 23 id. 491; *Comm'rs of Cherokee Co. v. The State, ex rel.*, 36 id. 337.

The petitioner contends that the powers and jurisdiction conferred upon the probate court by the act in question are unauthorized, and quotes §8 of article 3 of the constitution. In *In re Johnson*, 12 Kas. 102, the court held that, while this provision of the constitution might limit and restrict the legislature in conferring the jurisdiction upon the probate court, yet it did not prevent the legislature from giving to the probate judge such powers and duties as were not inconsistent with those given to the probate court by the constitution.

See *The State, ex rel., v. Dennis,* 39 Kas. 509; *Mendenhall v. Burton,* 42 id. 570; *In re Latta,* 43 id. 534.

The opinion of the court was delivered by

HORTON, C. J.: The petitioner alleges that he has been illegally committed to the state reform school by the probate court of McPherson county, and seeks by this proceeding to be discharged. The contention is that chapter 129, Laws of 1881, is in violation of § 16, article 2, of the constitution; at least, that the title of the act is not sufficiently comprehensive to include everything contained therein; particularly that it is not broad enough to include the provisions of the fourth section of the act, giving courts of record, including probate courts, power to commit boys under 16 years of age to the reform school. (Gen. Stat. of 1889, ¶ 6516.)

"Organization" is defined as "an arrangement of parties;" "the act of organizing," as "the organization of a government, or of flocks, or of a railroad or other corporation, or of an army, or of an expedition;" "the connection of parts in and for a whole, so that each part is at once end and means." "Socially, as well as individually, organization is indispensable to growth." "Management" is defined as "government; control; superintendence; physical or manual handling or guidance; the act of managing by direction or regulation; administration, as the management of a family, or of a household, or of servants, or of great enterprises, or of great affairs." A "school" is defined as "an institution for learning; an educational establishment; a place for acquiring knowledge and mental training;" "an assemblage of scholars; those who attend upon the instruction in a school of any kind;" "a body of pupils collectively in any place of instruction, and under instruction of one or more teachers;" "the disciples or followers of a teacher," and "any place or means of discipline, improvement, instruction, or training." When we speak of "organizing a corporation," we mean the filing of its charter; the designation of its shares of stock; the selection of its directors; everything necessary to organize or bring into existence

or create a corporate body.   The authority to organize and manage or govern an army, unless otherwise restricted, gives power to the commander in chief, or those in authority, to bring together, to collect, to assemble, to recruit persons for military service, and thereby to bring into existence or create a military force, and to increase, decrease or change the same or any part thereof, as well as to command, direct and regulate the force or army after it is organized or brought into existence. We do not intend to say that "the organization of a school" is broad enough in its strict sense to literally create or make boys or girls, but these words construed together are sufficiently broad, within their usual and ordinary meaning, to signify the bringing in, the bringing together, the collecting, the placing in, the committing of boys or other inmates to a school; that is, the organizing or bringing into existence or creating a school.

Section 4, which is criticised as not within the title of the act, provides, in connection with other sections of the act, the way in which boys are collected, brought in or committed to the school; that is, the manner in which the school is organized, or brought into existence, kept in existence, and operated with boys or inmates.   The organization and management of a school relate to one subject.   Construing all of the words of the title of chapter 129, we think there is sufficient therein to authorize something more than provisions to merely systematize and regulate an existing school, or an existing place of discipline, instruction, or training,   Evidently, the legislature intended by the title one whose scope was broad enough to embrace the bringing together, the collecting, and the furnishing of pupils or inmates to or for a reform school.   Not only that, but the title is broad enough to include provisions in the act for bringing in, or bringing together, for collecting and furnishing whatever is necessary to complete and carry on a reform school.   The general rule is that, in determining whether an act of the legislature is constitutional, it is the duty of the courts to give such construction to it, if possible, as will uphold all of its provisions.   Then, again, it is not

necessary that the title to an act should be a synopsis or abstract of the entire act in all its details; it is sufficient if the title indicates clearly, though in general terms, the scope of the act. With our construction of the title of the act and the provisions thereof, we think, within the prior decisions of this court, that the constitutionality of the act may be upheld. (*Woodruff v. Baldwin*, 23 Kas. 491; *The State v. Barrett*, 27 id. 213; *Comm'rs of Cherokee Co. v. The State*, 36 id. 337; *The State v. Bush*, 45 id. 140; Cooley, Const. Lim, 144.)

1. State reform school—valid statute.

The other contention of the petitioner against the commitment is more serious. In the act the legislature has provided for commitments to the school of boys under 16 years of age in the following manner: Under § 3, any boy who shall have been convicted of an offense punishable by imprisonment; under the first subdivision of § 4, any boy who may be liable to punishment by imprisonment under any existing law of the state; under the second subdivision of § 4, any boy, with the consent of his parents or guardian, against whom the charge of any crime or misdemeanor shall have been made, the punishment of which, on conviction, would be confinement in a jail or prison; under the third subdivision of § 4, any boy, who is incorrigible, etc.; and under § 5, any boy, with his consent, who shall be arraigned for trial in any court competent to try the case on any charge under the criminal code, for violation of any law of the state which, upon conviction, would subject him to imprisonment. (Gen. Stat. of 1889, ¶¶ 6515–6517.) If the petitioner in this case had been duly convicted of any offense known to the laws of the state punishable by imprisonment, we think he could have been sentenced and confined to the reform school under § 3 of the act; or if he had been committed to the reform school by the probate court of McPherson county, or any other court of that county, under the second and third subdivisions of § 4, or if he had been committed with his consent under § 5, we would have no hesitation in enforcing the order. "The tendency of the courts, in construing the powers of committing magistrates

and other officials empowered by statutes to place minors in juvenile institutions for care and guardianship, and in passing upon their proceedings, is to disregard mere technicalities, and to give such interpretation to the statutes as to carry out their benevolent design and sustain the proceeding in pursuance thereof, when such course is evidently to the advantage of the minor." (30 Cent. Law J. 53, and cases cited; *In re Mason,* 28 Pac. Rep. 1025; *Ex parte Crouse,* 4 Whar. 9; *The State, ex rel., v. Brown,* 52 N. W. Rep. 935; *In re Ferrier,* 103 Ill. 367; *McLean v. Humphreys,* 104 id. 378; *Industrial School v. Supervisors,* 40 Wis. 328; *Farnham v. Pierce,* 141 Mass. 203; 6 N. E. Rep. 830; *Roth v. House of Refuge,* 31 Md. 329.)

The petitioner was tried upon a complaint before the probate judge, charging him with the specific offense of burglary. It is not alleged in the complaint that he is incorrigible, or otherwise a fit person to be sent to the reform school. The probate judge found that the complaint charging him with burglary was true. The petitioner has not consented to his commitment, and his parents strenuously object.

3. Probate judge
—authority
to commit.
We do not think the order can be enforced. If the first subdivision of § 4 must be construed as authorizing courts of record, including probate courts, to commit any boy under 16 years of age, without his consent, and against the objections of his parents, to the reform school, who is charged only with a specific criminal offense like burglary, punishable by imprisonment, without a trial or hearing, according to due process of law, then it is doubtful whether that part of the statute is constitutional. (*The State v. Ray,* 63 N. H. 406; *Commonwealth v. Horregan,* 127 Mass. 450.) The proceedings in this case are in the nature of a conviction for a specific crime by a court having no criminal jurisdiction. Such a conviction ought not to be had, in an irregular and improper way, even if not followed by any sentence of imprisonment or other punishment. If, however, the boys "who may be liable to punishment by imprisonment" do not incur such liability until they are convicted in the usual form, the

first subdivision of § 4 may have some operation.   We think that the words "may be liable to punishment"

2. Certain words, construed. should be construed as meaning *subject* to punishment.  "Liable" has, also, that meaning.   Courts of record, including probate courts, may possibly have the authority, where a boy under 16 years of age has been convicted of a criminal offense punishable by imprisonment, and sentenced to a prison by a justice of the peace or a court, afterward to commit him to the reform school.   The provisions of the act, however, should be given such a construction as to keep them within the limits of the constitution.

The petitioner will be discharged.

All the Justices concurring.