*In re* ELMER L. STOKES, *Petitioner.*
No. 13,709.   (73 Pac. 911.)

SYLLABUS BY THE COURT.

REFORM SCHOOL—*Jurisdiction of Justice.*   No power is conferred
on a justice of the peace by the provisions of chapter 129 of the
Laws of 1881 (Gen. Stat. 1901, §§ 7118–7136) to commit a boy to
the reform school.

Original proceeding in *habeas corpus.*   Opinion filed
October 10, 1903.   Petitioner discharged.

*E. M. Swartz,* for petitioner.

*Quinton & Quinton,* and *C. C. Coleman,* attorney-general, for respondent.

The opinion of the court was delivered by

SMITH, J.: The petitioner is a boy under the age
of sixteen years who was convicted of the crime of
petty larceny before a justice of the peace of Rock
Creek township in Nemaha county, and sentenced by
said justice to the State Reform School at Topeka un-
til he should arrive at the age of twenty-one years, or,
if not accepted at the reform school, then to imprison-
ment in the county jail for a period of thirty days.
The question before us is whether a justice of the
peace is vested by the law with power to commit the
prisoner to the reform school.

The reform school was erected under the supervis-
ion of the state board of charities, as provided in
chapter 170, Laws of 1879 (Gen. Stat. 1901, §§ 7118
and 7119.)   At the next session of the legislature
chapter 129, Laws of 1881, was enacted, entitled "An
act to provide for the organization and management of
the State Reform School" (Gen. Stat. 1901, §§ 7118–

7136.)  Sections 3 and 4 of the law last mentioned read :

SEC. 3.  Whenever any boy under the age of sixteen years shall be convicted of any offense known to the laws of this state, and punishable by imprisonment, the court or justice, as the case may be, before whom such conviction shall be had, may, at its discretion, sentence such boy to the state reform school, or to such punishment as is now provided by law for the same offense ; and if the sentence shall be to the reform school, then it shall be in the alternative to the state reform school, or to such punishment as would have been awarded if this act had not been passed.

SEC. 4.  Courts of record, and probate courts of the state shall have power to commit to the reform school— *First*, any boy under sixteen years of age who may be liable to punishment by imprisonment under any existing law of the state, or any law that may be enacted and in force in the state ; *second*, any boy under sixteen years of age, with the consent of his parent or guardian, against whom any charge of committing any crime or misdemeanor shall have been made, the punishment of which, on conviction, would be confinement in jail or prison ; *third*, any boy under sixteen years of age who is incorrigible, and habitually disregards the commands of his father or mother or guardian, and who leads a vagrant life, or resorts to immoral places or practices, and neglects and refuses to perform labor suitable for his years and condition, and to attend school ; *Provided*, That before said court shall commit such boy, he shall cause to be filed a complaint setting forth the charges complained of in writing, and before he shall investigate said charges he shall give at least five days' notice to all persons interested of the filing of said complaint, and the time and place of hearing of the same, and if on the final hearing of said complaint he is satisfied that said complaint is true, and that the case comes under the provisions of this act, he may commit."

Section 3, copied above, confers on a justice of the

*In re* Stokes.

peace power *to sentence* only. If this section stood alone we might with reason hold that the authority given by it to sentence to the reform school carried with it by implication the power to commit.

Section 4 has relation to the matter of *committing* boys to the reform school, and the power to do so is restricted to courts of record, including the probate court. These courts are authorized to commit to the reform school "any boy under sixteen years of age who may be liable to punishment by imprisonment under any existing law of the state." Such was the status of the petitioner after his conviction by the justice of the peace. In the case of *In re Sanders, Petitioner*, 53 Kan. 191, 201, 36 Pac. 348, 350, 23 L. R. A. 603, it was held that the words "liable to punishment" should be construed as meaning "subject to punishment."

We are cited by counsel for respondent to sections 5822 and 5824, General Statutes of 1901, giving power to a justice of the peace both to fine and imprison in misdemeanor cases, and requiring the officer to whom his warrant is directed to carry out its commands. These statutory provisions, however, are general and have reference to a commitment to the county jail.

We think it was the intention of the legislature by the act of 1881 to provide for a formal record of the commitment of a boy to the reform school by vesting that power in courts having a seal.

In the present case the petitioner is about fourteen years of age, and if held under discipline in the reform school his term of detention might be extended to seven years. We think that by the enactment of section 4 above set out, it was the legislative design to divest justices of the peace of such power and to vest it in courts of record, to be exercised after due

consideration, and after notice to all persons interested, which necessarily includes the boy's parents. The record of conviction before a justice of the peace might of itself be sufficient evidence on which the district or probate court might act. This was intimated in the case of *In re Sanders, Petitioner*, supra, where it was said :

"Courts of record, including probate courts, may possibly have the authority, where a boy under sixteen years of age has been convicted of a criminal offense punishable by imprisonment, and sentenced to a prison by a justice of the peace or a court, afterward to commit him to the reform school." (p. 201.)

It may be of service, by way of comparison, to refer to chapter 93, Laws of 1869. By that act reform schools were established in all counties in the state in which there was located a city of the first class, for the punishment, reform and education of juvenile offenders. By section 16 of the act it was expressly provided that upon the conviction of any person under the age of sixteen years of a felony or misdemeanor before a criminal court, police judge, or justice of the peace, instead of his being sentenced to the penitentiary or to the county jail or to pay a fine, the court or officer "shall order the person so convicted to be removed to, and confined in, the reform school established by this act." In section 22 of the same law the board of managers of such reform school were required to receive all persons so convicted and committed. It will be seen that the law under consideration is materially different in its provisions respecting the power and jurisdiction of justices of the peace from cases falling under the law of 1869.

The petitioner will be discharged unless within ten days from this date a commitment be issued by a court of record for his detention.

JOHNSTON, C. J., POLLOCK, BURCH, MASON, JJ., concurring.

GREENE, J., dissenting: I cannot give my assent to the opinion of the court in this controversy. To my mind the language of section 3, quoted in the opinion, is so plain as to be incapable of misunderstanding, and its provisions so complete within themselves·that the wonder is that a suggestion could come to the mind that it was in any way dependent upon section 4 for its final execution.

Under section 3 the party charged must be given a trial by a jury, if demanded, and is protected by all the other formalities of the law provided by the legislature for the trial of persons over the age of sixteen years, charged with the commission of any misdemeanor of which a justice of the peace has jurisdiction. The opinion concedes the power of the justice of the peace to try and sentence, but denies the power to commit. It has always been held that the power to try and sentence includes the power to issue process to carry the judgment of the court into execution, and that is the only office of a commitment. (4. Wend. Black. Com. 289; I Chit. Crim. L., 35.)

It is said in the opinion that "if this section stood alone we might, with reason, hold that the authority given by it to sentence to the reform school carried with it by implication the power to commit." The theory of the court is that the power to commit, which by implication is contained in section 3, is taken away by the provisions of section 4. To me it is plain that the provisions of section 4 have not, and were not intended to have, application to proceedings had under section 3. Section 4 provides that courts of record and probate courts may, upon complaint, make an

investigation of the charges preferred and without a trial or conviction commit to the reform school. Under this section the accused party is not entitled to demand a jury or that the investigation be held with any of the formalities provided by law for the trial of criminal cases.

It is said in the opinion that it was the intention of the legislature by the act of 1881 to provide for a formal record of the commitment of the boy to the reform school. The policy of Kansas has been to make such institutions reformatory instead of penal. If so, why should the legislature desire to make a lasting record against every boy whose youthful indiscretions lead to a term in the reform school? Our policy has not been to perpetuate a record of such matters, but to forget, and assist the world to forget, as soon as possible.

If it be correct that when a justice of the peace has tried a boy and exercised his discretion and sentenced him to the reform school he must then, without any provision for the issuance of any process therefor, be conveyed by some person before the district or probate court whose duty it shall be, without investigation or the exercise of any judicial power, but purely as a ministerial act, to issue a commitment, it necessarily follows that if such court neglect or refuse to issue the order it may be compelled to do so by mandamus, or possibly the judge may be held in contempt of the order of the justice of the peace. I do not believe it was the intention of the legislature (and certain it is that it uses no language in either of the sections which conveys to the mind the idea that it was its intention), to compel courts to go through so useless a formality.

CUNNINGHAM,, J., dissenting: I fully agree with Mr. Justice Greene in his dissent, and further suggest

*In re* Stokes.

that the petitioner ought not to be discharged simply because the detaining officer has no formal commitment by which to justify.   The detention is authorized by the sentence of the justice of the peace given under authority of law.   At most, only the formality of the issuing of the paper *mittimus* has been neglected.   The office of the *mittimus* is to carry out the judgment— to place the prisoner in the custody ordered by the court.   (Sennott's Case, 146 Mass. 489, 16 N. E. 448, 4 Am. St. 344.)   As stated by the court in *The People, ex rel., v. Baker*, 89 N. Y. 460, at page 465 :

"A prisoner who has been properly and legally sentenced to prison can not be released simply because there is an imperfection in what is commonly called the *mittimus*.   A proper *mittimus* can, if needed, be supplied at any time and if the prisoner is safely in the proper custody, there is no office for a *mittimus* to perform."

In section 375 of Church on *Habeas Corpus*, it is said :

"A prisoner who has been properly and legally sentenced to prison can not be released simply because there is an imperfection in what is commonly called the *mittimus*."