[No. 5465.   Decided March 10, 1905.]

JOHN RUSSNER, *Appellant*, v. FRANCES P. McMILLAN, *Respondent*.[1]

PARENT AND CHILD—GUARDIANS—APPOINTMENT—QUALIFICATIONS —CUSTODY OF INFANTS—FATHER IMPROPER PERSON.  After a decree of divorce for non-support awarding to the mother the custody of children between two and five years of age, the father, upon the mother's death, is not entitled to their custody and guardianship, where it appears that he was addicted to the use of liquor, was without a home or relatives to care for them, and was engaged as a waiter in a saloon, and had been in the habit of giving the children liquor; and a temporary appointment of their grandmother, who was found to be a suitable person, is proper and will not be disturbed where the trial court saw and heard the witnesses.

SAME—TEMPORARY GUARDIANSHIP—EQUITY POWERS OF COURT. Upon conflicting applications of a father and a grandmother for the guardianship and custody of young children, where the father appears to be unfit to have their custody, the judgment awarding the custody to the grandmother may properly be made temporary in its character, and the children made wards of the court, for the purpose of changing the guardianship if the father should reform in the future and furnish proper assurances of his qualifications, or if the guardianship of the grandmother should become unsuitable, and the equitable jurisdiction of the court may be invoked in such a proceeding.

SAME — EVIDENCE OF FITNESS OF GUARDIAN — ADMISSIBILITY. Upon an issue as to the fitness of a person to have the custody of children, it is proper to exclude evidence that one of the applicant's daughters had been arrested for vagrancy, where she had not had her custody or rearing and was in no way responsible therefor.

Appeal from a judgment of the superior court for King county, Hon. Austin E. Griffiths, Judge *pro tempore*, entered June 28, 1904, after a hearing on the merits of conflicting applications for appointment as guardian of minors. Affirmed.

1Reported in 79 Pac. 988.

*Geo. M. Sinclair,* for appellant.

*Willett & Willett,* for respondent.

Root, J.—The appellant, John Russner, is the father of two girls and a boy, aged respectively five, four, and two years. The mother of these children died prior to the commencement of this proceeding. The mother was the daughter of this respondent, Mrs. Frances P. Mc-Millan. Within two months prior to her death, the mother obtained a divorce from appellant, upon the ground that he had not supported her and these children during the three years then last past, although able to do so. The children were awarded to her. When conscious of near approaching death, the mother requested that the children be given to their grandmother and not to their father. After her death, appellant, respondent, and the children resided together for a time, but had difficulty; whereupon appellant withdrew from her home.

At about this time, each of these parties filed a petition for appointment as guardian of the persons and estate of these minor children. The petitions were heard together, and, among other things, the court found: "That the father is in the habit of using liquor freely at all times and places, according to his own will, both at home and abroad; but that he is not an habitual drunkard, and is competent to transact his own business and is fondly attached to his children;" that he has a farm worth $2,500, a timber claim, and some interests in a mining claim of unknown worth; "that he has no house or home, has no relatives in this country, and no place to which he could take these children; that he would have to place said children with some woman for their care;" that since coming to Seattle, "he has been employed in waiting on tables in one of the basement saloons and restaurants below Yesler way,

27-37 WASH.

in this city (Seattle), working on the night shift, his work being to carry liquor to the tables, and otherwise wait upon the drinkers," card players, and others patronizing that sort of a saloon; "that he is in the habit of drinking liquor while so engaged;" that he had been in the habit of giving these children liquor to drink in moderate quantities with their meals; "that John Russner at the present time is not a fit or proper person to have the care and control of these children and their estate."

We think the findings made by the trial court were certainly as favorable to appellant as he had any right to expect. The evidence showed that his wife had shortly before obtained a divorce because he had failed for three years to support her and these minor children; there was testimony going to show that he had lived for two years with a squaw, he himself admitting that the squaw had stayed at his house during that time as his housekeeper, there being no other woman residing there; he admitted that he had given these young children liquor; and there was evidence that this had been a common practice and carried to such an extent that the little ones, or some of them, had acquired such an appetite that they would cry for these intoxicating drinks. He admitted that he was working nights in an underground saloon south of Yesler way, Seattle, carrying drinks and looking after the card tables for those who congregated there; and that he was a constant drinker himself, and had been drunk some times; and other evidence showed that his getting drunk was a common occurrence.

The trial court denied the appellant's petition for appointment as guardian of the persons and estate of these minors. We think this action was right. The state and the public at large have an interest in the proper nurture, care and education of minor children; and, while it will

ordinarily be presumed that the parents of minors, on account of natural love and affection, are the ones best calculated to look after their interests, this presumption, like most others, cannot be indulged in the face of facts showing conclusively to the contrary.    The natural rights of the father to the care, control, and custody of his minor children cannot, and ought not to, be denied or disturbed in the absence of good and substantial reasons—reasons made imperative by the necessities of such children and the interest in, and the duty owing to, them by the state.    But where it has been adjudicated by a court of competent jurisdiction that a father has recently for three years neglected to support his offspring, and has thereby caused his wife to get a divorce, such husband is not in a good attitude to come into court and ask for their custody, control, and guardianship.    He should not be allowed the guardianship of his children until, by a substantial period of probation, he is shown to have amended his character and disposition regarding them, and to have acquired those worthy and substantial qualities of heart and mind that characterize the reputable man and the considerate father.

As to the right and propriety of awarding the custody and control and guardianship of minors to others than the father, the authorities afford ample justification.    We call attention to a few.    In the case of *County of McLean v. Humphreys,* 104 Ill. 378, 383, the court said:

"It is the unquestioned right and imperative duty of every enlightened government in its character of *parens patriae* to protect and provide for the comfort and well-being of such of its citizens as, by reason of infancy, defective understanding or misfortune or infirmity, are unable to take care of themselves."

In the case of *McKercher v. Green,* 13 Colo. App. 270, 58 Pac. 406, the supreme court of Colorado, among other things, said:

"The old rigid rule of the common law, which gave to the father . . . a right to the custody and services of his child, superior to that of the mother and a l others, has in modern times been greatly modified and relaxed both in England and America. Now it is almost universally conceded in both countries that this paternal right must yield and be subordinated to the interest and welfare of the child, under the control of the state."

The foregoing was a case where there was a contest between the father and the immediate relatives of the deceased mother, as to the custody and guardianship of the child, a girl six years of age, of a highly nervous temperament, delicate and devotedly attached to the mother's family, and where the father had no woman member of his household except his mother, aged about eighty years—otherwise without disqualifications of any kind. The court felt that the welfare of the child demanded that it be placed with the mother's relatives—that the consideration for its welfare should predominate over the rights and wishes of the father in the premises. In the case of *Ex parte Crouse,* 4 Whart. (Pa. St.) 9, the court said:

"It is to be remembered that the public has a paramount interest in the virtue and knowledge of its members, and that of a strict right the business of education belongs to it. The parents are ordinarily intrusted with it because it can seldom be put into better hands; but where they are incompetent or corrupt, what is there to prevent the public from withdrawing their faculties, held, as they obviously are, at its sufferance?"

In *Gishwiler v. Dodez,* 4 Ohio St. 615, the court said:

"Neither of the parents has any rights that can be made to conflict with the welfare of the child."

In *Prime v. Foote,* 63 N. H. 52, a child was taken from both father and mother and given to an aunt. Among other things the court said:

"This power of the father, however, is regarded as a

trust, confided to him by law, upon the presumption that the natural affection of the parent will insure its faithful execution. But, like other guardians, he may, for inability or unfaithfulness, be displaced, and the trust conferred upon another."

With regard to the respondent, the trial court made the following finding: .

"That the grandmother is able and willing to give these children a good home and proper training; that these children are very much attached to her; that they need a good home and the care of some woman who will take their mother's place as far as that is possible; that the grandmother is a strong-minded, sensible, sober, intelligent woman, with whom these children will have the best of care and a good home, with such moral and social surroundings as they should have."

From the evidence, we think this finding is fully as favorable to respondent as could be justified. There were some admitted facts, and considerable evidence in the case, well calculated to arouse a suspicion as to the fitness of respondent to have these minor children. However, the trial court had the benefit of seeing her upon the witness stand, observing her manner and deportment, and the manifestations of love and affection seeming mutually to exist between her and these children, and was in a better position to correctly weigh all of the evidence than are we. The record shows that the learned judge *pro tempore,* who heard this case, tried it with marked fairness and impartiality, keeping paramount a commendably humane consideration for the welfare of these young children. It was an exceedingly delicate matter to deal with. The rights and affections of the father, the love and solicitude of the grandmother, the interest and concern of the state, as to these children—all these were matters to be regarded, and secondary only to the welfare of the children themselves.

In the light of all these considerations, under the evidence and laws of the case, we are disposed not to disturb the judgment of the trial court.

In this judgment and decree, the respondent was granted the temporary guardianship of these minor children, it being specifically adjudged and decreed that they should be and remain wards of the court, and that said order and decree should be subject to modification whensoever the best interest of the minors should suggest. In the conclusions of law, among other things, the trial judge stated "that John Russner is not a fit or proper person to have the custody or care of his children *at this time,* but that, under changed conditions, he may hereafter become in law entitled to the custody and care of said minors." It was evidently the intention of the trial judge that, at any time in the future, when the father should furnish to the court proper assurances of suitable reformation in his character and manner of life, in so far as they should bear upon his fitness to have the custody and control of these minors, and should be able to show to the court that their welfare would properly be conserved under his guardianship, that he should be permitted to be appointed as their guardian. The judgment and decree was made temporary in its character evidently for this purpose, and for the further purpose of changing the guardianship from respondent, in case her character and manner of life should become unsuitable to warrant her further holding the custody and control of said children. If the career of this appellant in the future, for such a length of time as to give reasonable assurances of its permanency, is such as to fairly justify him in having the custody and control of these children, his shortcomings of the past should be overlooked, and he should be awarded the guardianship of these children. A

high standard should not be insisted upon; but it should
be sufficiently substantial to assure these children the sur-
roundings, protection, and treatment demanded by ordi-
nary respectability and a wholesome sense of decency.

It is contended that the terms of the judgment and decree
called in exercise equity powers of the court, and that such
jurisdiction could not be properly invoked in such a pro-
ceeding. We think the action of the trial court is abun-
dantly justified by the spirit of our code, and that appel-
lant's contention is at variance with former holdings of
this court. *Filley v. Murphy,* 30 Wash. 1, 70 Pac. 107;
*Browder v. Phinney,* 30 Wash. 74, 70 Pac. 264; *Koontz v.
Koontz,* 25 Wash. 336, 65 Pac. 546. See, also, Bispham,
Prin. Equity (6th ed.), § 541 *et seq.;* 2 Story, Equity
Juris. (13th ed.). § 1341 *et seq.* The author last cited,
§ 1342, says:

"The jurisdiction thus asserted, to remove infant chil-
dren from the custody of their parents and to superintend
their education and maintenance, is admitted to be of ex-
treme delicacy, and of no inconsiderable embarrassment
and responsibility. But it is nevertheless a jurisdiction
which seems indispensable to the sound morals, the good
order, and the just protection of a civilized society."

Appellant excepted to the sustaining of objections to
questions calculated to show the career of one of respond-
ent's daughters, who, it appears, was once arrested for
vagrancy. But it affirmatively appears that this daughter
had not been reared by respondent, but had been awarded
to a former husband at the time of divorce. Neither did it
appear whether this daughter was a minor when arrested.
There being no showing of any responsibility on respond-
ent's part for the conduct and training of said daughter,
we cannot say that the ruling was error.

Other errors are assigned, but we fail to find merit in these assignments. The judgment is affirmed.

MOUNT, C. J., RUDKIN, DUNBAR, and CROW, JJ., concur.

HADLEY and FULLERTON, JJ., took no part.